Jose Alfredo **HERNANDEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–89–01093–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 19, 1991.

Calvin Garvie, Bellville, for appellant.

Travis J. Koehn, Asst. Austin County Dist. Atty., Donna Little, Richmond, for appellee.

Before MIRABAL, DUGGAN and O'CONNOR, JJ.

## OPINION

MIRABAL, Justice.

A jury found Jose Alfredo Hernandez, appellant, guilty of the offense of unauthorized use of a motor vehicle and assessed punishment, enhanced with one felony, at 20 years' confinement and a $10,000 fine. We affirm.

The indictment alleged that the appellant "knowingly and intentionally operated another's motor-propelled vehicle, to wit: one automobile, without the effective consent of the owner, Ed Malinowski." The elements of the crime are that a defendant, without the consent of the owner, knowingly and intentionally operated a motor vehicle, knowing that he did not have the effective consent of the owner to operate the vehicle. *Gardner v. State*, 780 S.W.2d 259, 261, 263 (Tex.Crim.App.1989); *McQueen v. State*, 781 S.W.2d 600, 602, 604 (Tex.Crim.App.1989); TEX.PENAL CODE ANN. § 31.07 (Vernon 1989).

In his two points of error, appellant contends that the trial court erred in allowing into evidence irrelevant and extraneous testimony that caused undue prejudice. The appellant complains that the sole reason the State offered the evidence was to try him for a criminal attitude or for being a criminal, generally. The State responds to appellant's argument by saying the testimony of each extraneous matter was admissible to tell the jury of the circumstances surrounding the recovery of the van, and to show the appellant's motive. We summarize the evidence here:

Appellant was an employee of the complainant. John Ladner, another employee of complainant, testified that on Friday, May 26, 1988, he and appellant went on a job together in the subject van; Ladner drove. When they returned to the office at the end of the work day, Ladner's truck would not start. Ladner gave the keys to the van to appellant, and appellant drove the van to the front of Ladner's truck to help jump start Ladner's truck. Ladner said he went home once his truck started, and he could not recall if he left before appellant, or if appellant still had the keys to the van when Ladner left.

Denise Brending, an employee of complainant, testified that the next day, Saturday, appellant radioed in to the office from the van and reported the van was broken. He asked if he could get his paycheck early. Brending told appellant that she did not have access to the payroll checks. Brending testified that John Kopech, another employee, came on the radio and said he would go get the appellant and check on the van.

John Kopech testified that he found appellant alone with the van. Appellant had been drinking, even though it was morning. When he asked appellant what he was doing, appellant said he was "working on girls." Appellant would not give Kopech the keys to the van. Kopech stated he made up an excuse, and got the keys from appellant. Appellant told Kopech he did not want to continue working for the complainant. He said that complainant owed him money, and he was going to get it even

if he had to burn down his building and truck, or even if he had to kill him. This testimony initially was taken out of the jury's hearing. Appellant's counsel objected to this testimony as extraneous and prejudicial, asserting that this testimony might result in appellant's conviction solely because of this statement, and that it had nothing to do with the unauthorized use of a vehicle. The trial court overruled the objection. Kopech was allowed to repeat his testimony before the jury.

Edwin Malinowski, the complainant, testified that notices were posted around the office stating that the vans were for company use only. Appellant was not allowed to drive the company vehicles. Malinowski saw appellant Sunday evening, the day after the van was recovered, when appellant came to his house, which was located behind the office. Malinowski had just returned from an out of town trip. Malinowski said appellant told him he was quitting and wanted his money. During this conversation, Malinowski's wife and children were standing outside the house with him, but he got them into the house as soon as he could. Malinowski said appellant appeared intoxicated. Malinowski asked appellant why he took the van but he could not remember appellant's answer. Over objection, Malinowski testified that when he told appellant he could not give him his check until Friday, appellant got violent and wanted to get into Malinowski's house. Malinowski went into his house, called the sheriff, and then came back out with a shotgun.

Sheryl Malinowski, the complainant's wife, testified that she got her children into the house when appellant came to their house because she was afraid for their safety.

In point of error one, appellant complains that the trial court erred in allowing John Kopech to testify that appellant said he "would get his money from complainant if he had to burn down his building and trucks or even kill him." Appellant argues this testimony was irrelevant, hearsay, "extraneous," and caused undue prejudice.

■ Appellant presents no argument under point of error one. Under point of error one, appellant merely transcribes, verbatim, the proceedings at trial—the offer, the objections, and ruling by the court. By failing to brief the point of error or to cite any authority, appellant presents nothing for our review under point of error one. *Hutchins v. State*, 650 S.W.2d 412, 414 (Tex.Crim.App.1983); *McEntyre v. State*, 717 S.W.2d 140, 150 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd).

We overrule point of error one.

■ In point of error two, appellant complains that the trial court erroneously allowed Malinowski to testify about events that occurred the day after appellant last had the van. Appellant argues that the testimony was irrelevant, contained "extraneous matters," and was prejudicial. We interpret appellant's point of error as challenging Malinowski's testimony as extraneous offense evidence. An extraneous offense is any act of misconduct, whether resulting in prosecution or not, which is not shown in the charging instrument and which was shown to have been committed by the accused. *See Crawley v. State*, 513 S.W.2d 62, 65 (Tex.Crim.App.1974); *Gomez v. State*, 626 S.W.2d 113, 114 (Tex.App.—Corpus Christi 1981, pet. ref'd).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show he acted in conformity with such other "bad" conduct. However, such evidence may be admissible for other purposes, such as proof of *motive*, opportunity, *intent*, preparation, *plan, knowledge*, identity, or *absence of mistake or accident*. TEX.R.CRIM.EVID. 404(b).

■ The test for the admission of extraneous offenses is two pronged. First, the court must determine if the extraneous offense is relevant to a material issue in the case other then the defendant's character. Second, the evidence must possess probative value that outweighs its inflammatory or prejudicial effect. *Clark v. State*, 726 S.W.2d 120, 122 (Tex.Crim.App.1986); *Van Brown v. State*, 771 S.W.2d 218, 221 (Tex.

App.—Houston [1st Dist.] 1989, review refused).

**[4]** *Relevant evidence* means evidence having any tendency to make the existence of any material fact more probable or less probable than it would be without the evidence. TEX.R.CRIM.EVID. 401. Relevant evidence is admissible unless the probative value of that relevant evidence is *substantially* outweighed by the danger of unfair prejudice to a defendant. TEX.R.CRIM.EVID. 403. Rule 403 favors admissibility of relevant evidence, and the *presumption* is that relevant evidence will be more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 377 (Tex.Crim.App.1991). Trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence. *Id.* at 389.

■ A trial court must be given wide latitude to exclude or not to exclude misconduct evidence as it sees fit. *Id.* at 390. Appellate courts must uphold the trial court's ruling on appeal absent an abuse of discretion. As long as the trial court's ruling is at least within the "zone of reasonable disagreement," the appellate court may not intercede. *Id.* at 391. The Court of Criminal Appeals, in the recent *Montgomery* opinion on rehearing, provides appellate courts valuable guidance regarding our role in reviewing a trial court's determination of relevancy:

It is true that Rule 401 defines "relevance," but that definition is necessarily a broad one. Whether particular evidence meets the definition will not always be cut and dried. Our adversarial system assigns that question to the trial judge, on the assumption that he has the best vantage from which to decide. Determining the relevance of any given item of evidence to any given lawsuit is not exclusively a function of rule and logic. The trial court must rely in large part upon its own observations and experiences of the world, as exemplary of common observation and experience, and reason from there in deciding whether proffered evidence has "any tendency to make the existence of any fact of conse-

quence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, supra. The determination of relevance, vel non, thus depends upon one judge's perception of common experience. [Citation omitted]. The process cannot be wholly objectified. Reasonable men may disagree whether in common experience a particular inference is available. Where there is room for such disagreement, an appellate court that reverses a trial court's ruling on relevancy accomplishes nothing more than to substitute its own reasonable perception of common experience for that of the trial court. The appellate court effectively displaces the trial court, commandeering a function institutionally assigned elsewhere.

*Id.* at 391.

■ We believe the case before us provides an example of reasonable people disagreeing about whether an inference of the requisite knowledge and intent can be drawn from the "misconduct" evidence. We believe there is room for such disagreement, and thus we, the appellate court, should not intercede.

The State admits its case against appellant was circumstantial; there is no direct evidence that when appellant drove the van, he knew he did not have the effective consent of the owner to drive it. Evidence of appellant's state of mind at the time of the incident, and of his feelings toward the owner, could provide a jury with some idea, drawn from reasonable inferences, about appellant's reasons for driving the van. We can understand why the trial judge, from his vantage point, would conclude that the subject testimony had a tendency to make it more probable than not that appellant intentionally drove the van without permission, knowing he did not have the consent of the owner. In our opinion, the trial court did not abuse its discretion when it ruled the testimony was relevant.

Further, applying the standards of review set out so recently by the Court of Criminal Appeals in *Montgomery* at pp. 391–393, we do not believe the trial court

abused its discretion in concluding the relevancy of the subject testimony was *not* substantially outweighed by the danger of unfair prejudice to appellant. Trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence. *Montgomery*, at 389. Appellate courts should reverse the judgment of the trial court rarely, and only after a clear abuse of discretion. *Montgomery*, at 392.

We overrule appellant's point of error two.

We affirm the judgment.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

I dissent. This appeal involves the use of criminal conduct, not charged as a crime, as evidence in a trial. We should reverse and remand to the trial court.

A jury found Jose Alfredo Hernandez, appellant, guilty of the offense of use of a motor vehicle without the effective consent of the owner, Ed Malinowski. The elements of the crime are that a defendant, without the consent of the owner, knowingly and intentionally operated a motor vehicle. TEX.PENAL CODE ANN. § 31.07 (Vernon 1989); TEX.PENAL CODE ANN. § 12.42(a) (Vernon 1974).

In point of error two, the appellant complains that the trial court erred by allowing Malinowski to testify about events that occurred two days after the offense. The appellant argues this testimony amounts to an improper admission of an extraneous offense.

The State admits that its case against the appellant was circumstantial. There was no direct evidence that the appellant had the intent to drive the van. Proof of a culpable mental state generally is based on circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim.App.1978). The courts have generally held that evidence of extraneous offenses committed by the accused is admissible to show the context of the criminal act. *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App.1972). The State claims it introduced the testimo-

ny to show the appellant's intent or possible motive for taking the van.

As the majority states, the test for the admission of extraneous offenses is two pronged: (1) the court must determine if the extraneous offense is relevant to a material issue in the case other than the defendant's character; and (2) the evidence must possess probative value which outweighs its inflammatory or prejudicial effect. *Caro v. State,* 771 S.W.2d 610, 617 (Tex.App.—Dallas 1989, no writ); *Clark v. State,* 726 S.W.2d 120, 122 (Tex.Crim.App. 1986); *Van Brown v. State,* 771 S.W.2d 218, 221 (Tex.App.—Houston [1st Dist.] 1989, review refused).

1. Relevance

Our first inquiry is whether the testimony was relevant to the issue of intent, not just to the appellant's character. Evidence is relevant if it has "any tendency to make the existence of any material fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R.CRIM.EVID. 401; *Montgomery v. State,* 810 S.W.2d 372 (Tex.Crim.App.1991).

In its brief, the State contends the statement that the appellant was quitting and that he wanted his money from the complainant, "establish[ed] a motive and intent to harm his employer in some manner." The State contends that Malinowski's testimony about his feelings of danger, two days after the event clarified the appellant's intent to drive the van without permission.

There are two things wrong with the State's argument. First, Malinowski's testimony about his own feelings have absolutely nothing to do with the appellant's intent. Second, at the time the appellant made the statement, the offense for which the appellant was charged had already been accomplished. Malinowski's feeling of danger might be relevant to a crime committed in his presence, but not to a crime committed two days before.

Malinowski's testimony did not make the existence of fact concerning whether the appellant drove the van or thought he had

authorization to use the van "more probable or less probable"; therefore, the testimony was not relevant. The testimony did make it more likely that the jury would convict, not because of the appellant's intent as to commit this crime, but because of Malinowski's expression of his fear and sense of danger. Malinowski's testimony did not provide any context for the criminal act—the confrontation with Malinowski was two days after the van incident. *Albrecht,* 486 S.W.2d at 100.

I conclude that the proffered testimony did not effect the probability of what the appellant's intent and motive was with respect to the unauthorized use of the van: It did not assist him in achieving his goal of payment of wages.

In *United States v. Goodwin,* 492 F.2d 1141, 1155 (5th Cir.1974), the court stated:

[W]e must continue to recognize, that the various categories of exceptions—intent, design or plan, identity, etc.—are not magic passwords whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in their names.

We should always keep in mind the relevance for which the State is offering evidence of other transactions or offenses. When offered for certain categories of proof, extraneous offenses are not automatically admitted as exceptions to the hearsay rule. *Boutwell v. State,* 719 S.W.2d 164, 171 (Tex.Crim.App.1985).

2. Probative value

Having found that the evidence was not relevant, I would not examine the evidence under the second prong, to determine if the danger of unfair prejudice outweighed any probative value. Instead, I would examine the evidence and the record to determine if it caused reversible error.

3. Harmless error

Rule 81(b)(2), TEX.R.APP.P., states

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reason-

able doubt that the error made no contribution to the conviction or to the punishment.

The appellate court should calculate as much as possible the probable impact of the error on the jury in the light of the existence of other evidence. *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App. 1989). The appellate court should not focus upon the propriety of the outcome of the trial. *Id.* Instead, the court should focus on the integrity of the process leading to conviction. The *Harris* Court directs us to examine: (1) the source of the error; (2) the nature of the error; (3) if the prosecutor emphasized the error; and (4) its probable collateral implications.

What was the source of the error? The State was the source of the error, and the appellant properly objected to it.

What was the nature of the error? The nature of the error was the admission of improper evidence that bolstered a weak case for the State, which was constructed solely of circumstantial evidence.

Did the State emphasize the error? The State emphasized the error in final argument both at guilt/innocence and at punishment. Before the finding of guilt, the prosecutor argued:

> You recall that the defendant was waiting at Mr. Malinowski's house when he arrived home. He was waiting there. He had been drinking again. He had threatened Mr. Malinowski. He said he wanted his money. He said that he told Mr. Kopech that he would burn down Mr. Malinowski's house or his van or even kill him because he wanted to get his money.

Before the finding on punishment, the prosecutor argued:

> [A]ll the evidence that was brought to you at the first phase of this trial, you can consider when you go back there and assess punishment against that defendant sitting right over there, which means you can consider what he said about threatening to burn somebody's house down, threatening, wanting to get his money, burn cars up or something like that.

What are the probable collateral implications of the error? The collateral implications of our affirmance of the error would be to encourage the State to offer inadmissible evidence when the State presents a weak case to the jury. The State could gamble that the inadmissible evidence, if admitted, could help convict, and on appeal, the inadmissible evidence would be shielded by presumptions that favor the judgment.

I cannot say beyond a reasonable doubt that the testimony of the complainant did not contribute to the conviction and punishment.