Williamson-RG v. State 

















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-321-CR

        RICKY GLENN WILLIAMSON,

                                                                                       Appellant
        v.

        THE STATE OF TEXAS,

                                                                                       Appellee
 

From the 77th District Court
Limestone County, Texas
Trial Court # 8375-A
                                                                                                    

O P I N I O N
                                                                                                    
          The appellant, Ricky Glenn Williamson, was found guilty of the offense of aggravated
assault with a deadly weapon and sentenced by a jury to 62 years in prison. Williamson brings
eleven points of error, claiming that the trial court erred: by erroneously charging the jury on the
parole issue; by refusing to allow his expert to render an opinion on whether his automobile was
used as a deadly weapon; by allowing the investigating officer to testify to hearsay statements; by
allowing the State to present evidence of various extraneous offenses; and by overruling his motion
for a mistrial after the State made an improper jury argument. Williamson also claims that the
evidence presented at trial was legally and factually insufficient to support the verdict. For the
following reasons, we will affirm in part and reverse and remand in part.
          On June 7, 1994, Williamson was driving Angela Phillips and their seven month old child
to his mother's house. On Road 937, between Groesbeck and Oletha, fifteen year old Tony
Messina and his passenger, Lisa Cooke, were driving to the Old Union Store to get something to
drink. Williamson saw Messina's pickup truck and stated to Phillips, "There's that [expletive],
I'm going to get him. I'm going to get him." Williamson fell in behind the vehicle and followed
Messina to the store. When they came to the store, Messina put on his blinker, turned right into
the parking lot, and parked his car. Williamson then turned his car into the lot, swerved his car
away from Messina's truck and then back towards it, accelerated and rammed the truck. 
          After the collision, Williamson and Messina exchanged words. Williamson then went into
the Old Union Store and called the police. Messina had hurt his arm and Cooke had injured her
back in the collision. Cooke drove Messina to the emergency room where they both received
treatment and were released. Before the police arrived, Williamson told Phillips that he would
hurt her if she "told the cops what really happened." When the investigating officer, Trooper Jim
Willis, arrived upon the scene, only Williamson and Phillips were still at the store. Phillips
walked past him, somewhat upset, and stated, "[I]f you really want to know what happened, come
and ask me." She told Willis that Williamson had intentionally rammed his car into Messina's
truck.
          According to the testimony, Phillips, Messina and Williamson all had previously known
each other. Angela Phillips had dated Williamson and had given birth to his child. She also had
dated Messina for a short time, which according to testimony, caused Williamson to become
jealous. Phillips testified that once during a phone conversation with Messina, Williamson
grabbed the phone and challenged Messina to a fight. 
          In his first point, Williamson claims that the trial court erroneously charged the jury on the
parole issue which resulted in egregious harm and denied him due process. We must first
determine if the trial court committed error, and secondly, if such an error did take place, whether
it was harmful to the defendant.
          We find that the trial court incorrectly charged the jury on parole. The court instructed
the jury that Williamson would have to serve one-fourth of his sentence or 15 years, whichever
is less. However, article 37.07, section 4(a), of the Code of Criminal Procedure requires the trial
court to instruct the jury that in cases where the defendant used a deadly weapon in the
commission of a felony offense, as Williamson did in this case, the defendant must serve at least
one-half of his sentence or 30 years, whichever is less. Tex. Code Crim. Proc. Ann. art. 37.07,
§ 4(a) (Vernon Supp. 1995).
          Now that we have determined that the trial court erred in its parole instruction, we must
determine if the error was harmful to Williamson. Jury charge error is measured by the standard
set forth by the Court of Criminal Appeals in Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1984) (on rehearing). In situations where the party complaining of error has objected at
trial, the court will reverse the trial court's judgment if the error is "calculated to injure the rights
of the defendant." Id. In other words, there must simply be "some harm" present to warrant a
reversal. Id. The defendant has the burden of proof to show that he has suffered some actual
harm, as opposed to theoretical harm as a result of the error. Abdnor v. State, 871 S.W.2d 726,
732 (Tex. Crim. App. 1994). However, when the complaining party has not timely objected to
the error at trial, he must not only show actual harm, but show that he was "egregiously harmed"
by the error. Almanza, 686 S.W.2d at 171. That is, the error was so harmful that the defendant
was denied a fair and impartial trial.
          Williamson claims that the error resulted in egregious harm and a denial of due process. 
The United States Constitution does not require a parole instruction in state court proceedings, and
consequently, we find that the error does not implicate rights flowing from the federal constitution. 
Myres v. State, 866 S.W.2d 673, 674 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (citing
O'Bryan v. Estelle, 714 F.2d 365, 389 (5th Cir. 1983)). Therefore, we will review the error
under the Almanza standard. In the present case, because Williamson did not make a timely
objection to the charge at trial, we will only reverse if it is shown that Williamson was
"egregiously harmed" by the improper parole instruction. 
          In determining if Williamson was egregiously harmed, we must consider several factors. 
We must look at the entire charge, the weight of the probative evidence, the contested issues, the
argument of the parties, and any other relevant information revealed by the record. Almanza, 686
S.W.2d at 171.
          The trial court erroneously instructed the jury that a defendant would be required to serve
one-fourth of his sentence or 15 years, whichever is less. However, in cases where the defendant
has been convicted of a crime with a deadly weapon, the defendant is required to serve at least
one-half of his sentence or 30 years, whichever is less. Williamson argues that this instruction
resulted in egregious harm. In contrast, the State points out that parole instructions were designed
to increase jury sentences and that Williamson benefitted from the more lenient instruction. See
Grigsby v. State, 833 S.W.2d 573, 576 (Tex. App.—Dallas 1992, pet. ref'd). However, in
performing a harm analysis, Texas appellate courts are not privy to the process by which the jury
assesses punishment. Id. Regardless of the intended purpose of parole instructions, we can
foresee situations where the jury may be more inclined to give a defendant a harsher sentence if
it believes that he will get out sooner due to parole. 
          In the present case, the jury convicted Williamson of aggravated assault with a deadly
weapon. The jury found that Williamson had been convicted of two previous felonies, Burglary
of a Habitation and Burglary of a Building. The jury was instructed that due to Williamson's
previous felonies, he could be sentenced to a term of life imprisonment, or a term of not over 99
years or less than 25 years and a possible fine not to exceed $10,000. Under the erroneous
instruction, the jury sentenced Williamson to 62 years in prison, assuring that he would serve at
least 15 years before he would be eligible for parole. Under the proper instruction, the jury would
have been informed that he would have to serve at least 15 more years before he would be eligible
for parole.
          The State argues that the error was cured by the court's jury instruction. The trial court
instructed the jury not to determine how the parole eligibility laws would apply to this particular
defendant. The courts have regarded similar instructions as curative and a mitigating factor to be
considered when determining whether an erroneous parole instruction has harmed a defendant. 
See Arnold v. State, 786 S.W.2d 295, 298 (Tex. Crim. App. 1990), cert. denied, — U.S. —, 111
S.Ct. 110 (1990). The purpose of this curative instruction is to discourage jurors from imposing
greater sentences than normal because of the parole charge. Grigsby, 833 S.W.2d at 577. 
However, in reviewing the record, we find from the severity of the sentence assessed, in relation
to the crime, that the instruction did not alleviate the harm caused. Therefore, Williamson's first
point is sustained and the cause will be remanded for a new punishment hearing.
          In his second point, Williamson claims that the trial court erred in not allowing his expert
to render an opinion about whether his automobile constituted a deadly weapon as used in the
offense. However, Williamson failed to preserve his error for review because he did not make
a record of the excluded testimony at trial. Tex. R. App. P. 52(a). Therefore, we overrule
Williamson's second point.
          In his third point, Williamson charges that the trial court caused harmful error by allowing
the investigating officer to testify to hearsay statements at trial.
          Williamson complains of certain statements made by Department of Public Safety Officer
James Willis concerning his investigation into the wreck. Specifically, on direct examination by
the State, Willis testified:
          [STATE]:      And were you able to determine what had happened at [the accident] site?
          [WILLIS]:     Yes sir.
          [STATE]:      Okay. And what were you able to determine?
          [WILLIS]:     I was advised -- When I came upon the scene, Mr. Williamson advised me
that there was an accident, and the other party had left the scene. Referring
back to my notes again. And while recording the incident information,
Miss Phillips walked past, somewhat upset, stated that if you really want to
know what happened, come and ask me.... [A]nd she stated Williamson
attempted to run the other vehicle off the [road].
(emphasis added)
          Williamson objected to the statements as hearsay, and the court issued a limiting instruction
to the jury to accept the information simply as information relied upon by Officer Willis on how
he went forward with his investigation. 
          A police officer may testify that he was acting in response to information received. 
Schaffer v. State, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989). However, out of court
statements cannot be used to prove indirectly what cannot be shown directly. Id. at 114-15. 
          In the present case, we find that the testimony of Officer Willis was not offered for the
truth of the matter asserted, but to establish the course of events and circumstances of his
investigation of the incident. Events do not occur in a vacuum, and the jury has a right to have
the events placed in the proper perspective. However, even if the testimony is considered
inadmissible hearsay, we find that such hearsay testimony was harmless. The State had proved
up the same facts when Angela Phillips had previously testified to the same basic information as
Willis. Anderson v. State, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986), cert. denied, 496 U.S.
944, 110 S.Ct. 3232 (1990). Therefore, we overrule Williamson's third point.
          In his fourth, fifth, and sixth points, Williamson claims that the trial court erred in
allowing: 1) the State to recount an inadmissible extraneous offense concerning endangerment to
a child in its opening statement; 2) testimony concerning an inadmissible extraneous offense of
alleged threats made to the alleged victim in its case in chief; and 3) testimony concerning an
inadmissible extraneous offense of an alleged prior assault in its case in chief. 
          An extraneous offense is any act of misconduct, regardless of whether it has been
prosecuted, which is not a part of the charging instrument, and which was shown to have been
committed by the accused. Hernandez v. State, 817 S.W.2d 744, 746 (Tex. App.—Houston [1st
Dist.] 1991, no writ). Rule 404(b) of the Rules of Criminal Evidence states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a
person in order to show that he acted in conformity therewith. It may, however, be
admissible for other purposes, such as proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident, provided, upon timely
request by the accused, reasonable notice is given in advance of trial of intent to introduce
in the State's case in chief such evidence other than that arising in the same transaction.
  
Tex. R. Crim. Evid. 404(b).
          In order to determine whether extraneous offenses have been properly admitted into
evidence, we must apply a two prong test. First, the court must determine if the extraneous
offense is relevant to a material issue in the case other than the defendant's character. Second, the
probative value of the evidence must outweigh its prejudicial effect. Hernandez, 817 S.W.2d at
746.
          Rule 401 defines relevant evidence as "evidence having any tendency to make the existence
of any fact that is of consequence to the determination of the action more probable or less probable
than it would be without the evidence." Tex. R. Crim. Evid. 401.
While the reviewing court may not necessarily agree with the argument of the State as to the
relevancy of the evidence, it will not "superimpose [its] own judgment as to relevance over that
of the trial court." Rogers v. State, 853 S.W.2d 29, 32 (Tex. Crim. App. 1993) (quoting
Montgomery v. State, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (on rehearing)). "Reasonable
men may disagree whether in common experience a particular inference is available," and
therefore, the reviewing court will not disturb a trial court's ruling as long as it is within the zone
of "reasonable disagreement." Id. 
          Williamson complains that a prior assault against Angela Phillips constituted an
inadmissible extraneous offense. Phillips testified:
          [STATE]:      Immediately after the incident, did Ricky talk to you before the police got
there?
 
          [PHILLIPS]:  Yes.
 
          [STATE]:      And what was that conversation?
 
          [PHILLIPS]:  He told me that the bruises that I had were nothing compared to what I
would get if I told the cops what really happened. (Witness began to cry.)
          [STATE]:      He said the bruises that you presently had would be nothing compared to
the bruises that you would get?
          [PHILLIPS]:  Yes.
 
          [STATE]:      You told the police what really happened?
 
          [PHILLIPS]:  Yes.
 
          [STATE]:      Did you have any bruises on you at that time?
 
          [PHILLIPS]:  Yes.
 
          [STATE]:      Where were they?
 
          [PHILLIPS]:  I had a black eye and a busted lip and several bruises on my back.
 
          [STATE]:      Okay. Has he made any threats since that time?
 
          [PHILLIPS]:  When I was going to court over custody of my son, he told me that if I
would lie for him in his court -- or if I didn't lie for him in court that he
would make me look like a bad parent and I would lose my son.
 
          [STATE]:      Have you lied for him at all?
 
          [PHILLIPS]:  No.
          We will not determine whether the trial court erred in admitting into evidence the testimony
concerning the threats and alleged prior assault against Angela Phillips because Williamson has
failed to preserve his error for review. The testimony was allowed into evidence without
objection. Therefore his point concerning this testimony is waived. Tex. R. App. P. 52(a).
          Williamson also complains about statements made by Lisa Cooke in the prosecution's case
in chief concerning alleged threats made by Williamson. Cooke testified that on the day before
the collision, Williamson had threatened Messina and told him that he was going to get him that
day or the next. The trial court sustained Williamson's objection to the evidence as an extraneous
offense and instructed the jury to disregard the statements. Williamson asked for and was denied
a motion for a mistrial. While Williamson has preserved his error for review, we find that the
court's instruction adequately cured any error caused by the statements concerning threats made
against Messina on the previous day.
          Williamson also charges that the court erred in allowing statements that constituted the
extraneous offense of endangerment to a child. In its opening statement, the prosecution stated:
I was telling you we're going to show you that threats were made against him all
along; that he promised him that's what he was going to do to him. Then he went
out there at the Old Union Store out on 939. And just as Tony pulled into the
store, he looked in his rearview mirror, and here comes Ricky. And with a baby
in Ricky's car--
          Mrs. Foster:  Your Honor, I would object again under the same grounds.
          The Court:     Overruled.
          [STATE]:      Thank you. With a baby in Ricky's car, hits the other car on purpose,
injuring the two occupants of that car, and almost tearing his own baby out
of the restraint that he was in, the seat belt in the car.
(emphasis added). 
          Later, in its case in chief, the State presented evidence through the testimony of Angela
Phillips that her seven month old child was in the back seat of the car at the time of the collision. 
While the State did not present any direct evidence that the child was endangered during the
incident, it can be inferred from the surrounding facts and circumstances that a child riding in a
car that was used to ram another car could be endangered. However, we will not discuss the
merits of this point because Williamson failed to preserve the error for review. While he objected
to the statement during opening, Williamson failed to object at trial to the testimony of Phillips
that her child was in the car. Failure of counsel to object not only waived his objection to the
testimony, but also cured any error that the court may have made in overruling Williamson's
objection to statements about the baby in the opening statement. Butler v. State, 769 S.W.2d 234,
241 (Tex. Crim. App. 1989), rev'd on other grounds, Geesa v. State, 820 S.W.2d 154 (Tex.
Crim. App. 1991).  
          Williamson also complains of statements made in the prosecution's opening statement and
by Angela Phillips concerning threats made by the defendant. In its opening statement, the
prosecution stated, "I think the evidence will show that for months earlier, weeks earlier, and the
day before, that Ricky Williamson has been threatening him." Williamson also complains of the
following testimony by Phillips in the State's case at trial:
          [STATE]:      Okay. Now, were you present at any time just prior to this when threats
were made?
          Mrs. Foster:  Your Honor, we would request a running objection.
          The Court:     Running objection will be allowed.
          [STATE]:      Were you present just prior to this incident when any threats were made?
          [PHILLIPS]:  I was. Ricky threatened Tony over the telephone, and I was there and
heard the threats that Ricky made.
          [STATE]:      Okay. When was this?
          [PHILLIPS]:  Whenever the car windows got busted out. I don't know the date.
          [STATE]:      This was some period prior to this incident that we're talking about today?
          [PHILLIPS]:  Right.
          [STATE]:      And you heard him make threats to Tony?
          [PHILLIPS]:  Right. I was on the phone with Tony, and he busted into my house and got
on the phone and said if Tony was man enough to come out to the street,
that he'd fight him and all this.
          Williamson argues that the threats are an extraneous offense. The State argues that
Williamson did not preserve error because he only requested a running objection and did not
specify the nature of the error. In order to preserve a complaint on appeal, a party must make a
timely objection that specifically states the legal basis for the objection unless the grounds are
apparent from the context. Tex. R. App. P. 52(a); Jones v. State, 843 S.W.2d 92, 98 (Tex.
App.—Dallas 1992, pet. ref'd). However, we find from reviewing the record, and from previous
objections the defendant made concerning these threats, that the trial court was properly apprised
that Williamson was objecting to the threats as an extraneous offense. Therefore, the complaint
was preserved for review. 
          Moreover, we find that the evidence was properly admitted. Williamson's defense of the
charge consisted of his assertion that the collision was an accident. Evidence of previous threats
against the victim go to the issue of proving absence of mistake or accident in injuring the victim
with his automobile. Moreover, this evidence is more probative than prejudicial. Therefore, the
evidence was properly admitted.
          In his seventh through tenth points, Williamson claims that the evidence is legally and
factually insufficient and that the evidence concerning the deadly weapon allegation is legally and
factually insufficient. We will discuss these points jointly.
          In addressing a legal sufficiency claim, the reviewing court must determine whether, after
viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89 (1979); Geesa 820 S.W.2d at 156. 
          With regard to the charge of aggravated assault with a deadly weapon, the State must show
that the defendant committed an assault


 and that he used or exhibited a deadly weapon during the
commission of the assault. Tex. Penal Code Ann. § 22.02 (Vernon 1994). Section
1.07(a)(17(A)(B) of the Texas Penal Code defines deadly weapon as:
(A) a firearm or anything manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury; or
(B) anything that in the manner of its use or intended use is capable of causing death or
serious bodily injury.

Tex. Penal Code Ann. § 1.07(a)(17)(A)(B) (Vernon 1994).
          An automobile used in an aggravated assault is not a deadly weapon per se. Parrish v.
State, 647 S.W.2d. 8, 10 (Tex. App.—Houston [14th Dist.] 1982, no pet.). Therefore, the
reviewing court must look to the manner of its use or intended use in determining whether the
vehicle was capable of causing death or serious bodily injury. See Ex parte McKithan, 838
S.W.2d 560, 561 (Tex. Crim. App. 1992). There is no requirement that the defendant intend to
cause death or serious bodily injury in order for an automobile to be a deadly weapon. It is
sufficient that the vehicle, as used by the defendant or as he intended to use it, was merely capable
of causing death or serious bodily injury. See Roberts v. State, 766 S.W.2d 578, 579 (Tex.
App.—Austin 1989, no pet.). 
          Regardless, viewing the evidence in the light most favorable to the verdict, the evidence
showed that Williamson intentionally caused bodily injury to Messina. In the present case, Angela
Phillips, who was a passenger in the defendant's car, testified that Williamson told her, "I'm going
to get him" when he fell in behind the victim's truck. She testified that Williamson "pushed on
the gas pedal" and swerved into the side of Messina's vehicle. There was also evidence that
Williamson had previously threatened Messina. Lisa Cooke, who was a passenger in Messina's
vehicle, testified that Messina had come to a complete stop and that Williamson "was trying to
speed up when he hit the truck." She also testified as to her back injury and Messina's arm injury
that were caused as a result of Williamson hitting his car.
          In addition, Messina testified that he had placed his vehicle in park and that Williamson,
who was about 40 feet away, aimed his vehicle at him and rammed him, injuring Messina's arm. 
Moreover, the investigating officer, Trooper Jim Willis, testified that he believed there was intent
involved on the part of Williamson in causing the wreck. 
          Viewed in a light most favorable to the verdict, any rational trier of fact could have found
beyond a reasonable doubt that Williamson committed an assault upon Messina and that his vehicle
was used and intended in such a manner that it was clearly capable of causing death or serious
bodily injury.
          With regard to a factual sufficiency review of the evidence and of the automobile as a
deadly weapon, the intermediate appellate courts have now been given the authority by the Texas
Court of Criminal Appeals to review factual sufficiency points in criminal cases. Clewis v. State,
No. 450-94, slip op. at 7 (Tex. Crim. App. January 31, 1996). Factual sufficiency review begins
with the presumption that the evidence supporting the jury's verdict was legally sufficient. Stone
v. State, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd, untimely filed). The court
is not limited to reviewing only evidence favorable to the prosecution, but it may also consider
evidence favorable to the defense and the existence of alternative hypotheses. Id. Without
viewing the evidence in the light most favorable to the prosecution, the court should set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Id. 
          Williamson claims that the evidence was factually insufficient to prove both the mens rea
of aggravated assault and that the automobile constituted a deadly weapon. While Williamson does
not deny that a collision occurred, he claims that the State did not prove that he intended for the
wreck to happen. Williamson claims that he applied his brakes before the crash. He cites the
testimony of defense witness Gregory Beck who stated that he heard a "screeching noise" before
the impact. He also cites the investigative officer's testimony that Williamson was applying his
brakes at the time of the incident and that the resulting damage was "light." Defense witness,
Ramon Salinas, a former Waco Police Officer, also described the damage as being "very, very
little." Salinas also testified that it was apparent the vehicle as used was not capable of causing
serious bodily injury. Williamson claims that if he had intended the collision, the damages and
injuries would have been much worse. 
          We disagree with Williamson's contention that the State did not prove the mens rea of the
offense. Regardless of the amount of damages or injuries suffered, the State, as we indicated
above, proved that Williamson operated his automobile in a manner that was capable of causing
death or serious bodily injury to Messina and Cooke. After reviewing all the evidence both
favorable and unfavorable to the verdict, we find the evidence concerning the offense, and the use
of a deadly weapon was factually sufficient. We overrule Williamson's seventh through tenth
points.            
          In his eleventh point, Williamson claims that the trial court erred in denying his motion for
mistrial after the State made an improper jury argument in its closing argument. Specifically, the
prosecutor stated, "Put yourself in Tony's [the victim's] position. Here's a thirty-five year old
man coming around..." Williamson objected, and the trial court sustained his objection and
instructed the jury to disregard the statement. Williamson then moved for a mistrial, which the
trial court denied. Williamson argues that telling the jury to place itself in the victim's shoes was
improper jury argument and constitutes reversible error. 
          The purpose of closing argument is to assist the jury in properly analyzing the evidence
presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence
alone and not on any fact not admitted into evidence. Campbell v. State, 610 S.W.2d 754, 756
(Tex. Crim. App. 1980). To be permissible, jury argument must fall into one of four general
areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to
argument of opposing counsel; and (4) plea for law enforcement. Alejandro v. State, 493 S.W.2d
230, 231-32 (Tex. Crim. App. 1973). 
          Improper jury argument will result in reversible error when the argument exceeds the
above mentioned permissible areas, if in light of the record as a whole, the argument is extreme
or manifestly improper, violative of a mandatory statute, or injects new facts, harmful to the
accused into the trial proceedings. Chandler v. State, 689 S.W.2d 332, 334 (Tex. App.—Fort
Worth 1985, pet. ref'd) (citing Matthews v. State, 635 S.W.2d 532, 539 (Tex. Crim. App. 1982)).
          It is improper for a prosecutor to ask members of the jury to place themselves in the shoes
of the victim. Chandler, 689 S.W.2d at 334. However, any harm from the improper jury
argument is cured when an objection to such argument has been sustained and the jury is instructed
to disregard, unless the remark is so inflammatory that its prejudicial effect cannot reasonably be
removed by such admonition. Thomas v. State, 578 S.W.2d 691, 695 (Tex. Crim. App. 1979).
          In the present case, we find that the argument was improper. However, we also find that
the trial court's instruction to the jury to disregard the remarks had the effect of curing the error. 
In reviewing the entire record, we find that the statement was mentioned fleetingly and was not
so inflammatory that it could not be cured by the admonition of the court. Williamson's last point
is overruled. 
          We affirm the conviction but remand the cause for a new punishment hearing.



                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Justice Cummings and
          Justice Vance
Affirmed in part, reversed and remanded in part
Opinion delivered and filed
Do not publish