# NO. 12-09-00218-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LAZARUS LEE DAVIS,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 241ST* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

*MEMORANDUM OPINION*

Lazarus Lee Davis appeals his conviction for aggravated robbery. He raises three issues on appeal. We affirm.

## BACKGROUND

On January 17, 2009, Sallee Brown, a sixty-five year old female, stopped at a convenience store for a snack. Shortly after departing the store, she missed her turn and pulled into a parking lot to turn around. A red Jeep then pulled in behind her, blocking Brown's car, and prevented her escape. Brown recognized one of the Jeep's occupants from the convenience store. That person was later identified as Natalie Saur. Appellant was sitting in the back seat of the Jeep. The driver of the Jeep, who was later identified as Christopher Watson, exited the vehicle and demanded Brown's money. When Brown refused, Watson retrieved what was later determined to be a BB gun from Saur, pointed it at Brown, and again demanded her money. Brown then complied. Watson returned to the Jeep and left the scene along with Appellant and Saur. Brown followed the Jeep for a few miles, called 911, provided a description of the Jeep, and told the dispatcher the first three numbers of the Jeep's license plate. Watson was eventually able to evade Brown.

Later, Tyler Police Department Officer Luis Aparacio observed a vehicle matching the description of the Jeep used in the robbery. After initiating his overhead

lights, a high speed chase ensued, during which Watson drove through residential neighborhoods at high speeds without his lights in the dark of night. Watson, Saur, and Appellant abandoned the vehicle and ran into the woods. Saur was apprehended, but Watson and Appellant escaped together. Watson and Appellant used the proceeds of the robbery to purchase food and pay a third party for a ride back to their homes in another area of Tyler.[1] Upon questioning by police, Saur identified Watson and Appellant as the other occupants of the vehicle, who were later arrested and indicted for aggravated robbery.

Appellant pleaded not guilty. At trial, Appellant's defense was that he was merely present during the course of the robbery, and that he played no role in its commission. The jury found Appellant guilty of the offense of aggravated robbery as alleged in the indictment and sentenced him to thirty-six years of imprisonment. Appellant timely appealed.

### FAILURE TO PROVIDE NOTICE OF EXTRANEOUS OFFENSE EVIDENCE

In his first issue, Appellant argues that, after he timely requested notice, the State failed to provide reasonable notice of extraneous offenses that it intended to offer against Appellant during its case-in-chief.

### Standard of Review and Applicable Law

We review claims challenging the admission of extraneous offenses for an abuse of discretion and will affirm the trial court's decision if it is within the zone of reasonable disagreement. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). An extraneous offense is any act of misconduct, whether resulting in prosecution or not, which is not shown in the charging instrument and which was shown to have been committed by the accused. *Hernandez v. State*, 817 S.W.2d 744, 746 (Tex. App.—Houston [1st Dist.] 1991, no pet.).

If the defendant makes a timely request, the State must provide "reasonable notice . . . in advance of trial" of its intent to introduce evidence of extraneous conduct. TEX. R. EVID. 404(b). "Reasonable notice" is not defined in the rule, and therefore depends on the facts and circumstances of each individual case. *Scott v. State*, 57 S.W.3d 476, 480

---

[1] Watson's testimony was equivocal as to whether the proceeds of the robbery were used to purchase food.

(Tex. App.—Waco 2001, pet. ref'd). What is clear, however, is that when proof of the extraneous offenses is contained in the state's file, the state's reference to its open file policy is not reasonable notice. ***Buchanan v. State***, 911 S.W.2d 11, 15 (Tex. Crim. App. 1995).

If an abuse of discretion is found because notice was unreasonable, a harm analysis is required under Texas Rule of Appellate Procedure 44.2. ***Wallace v. State***, 135 S.W.3d 114, 118 (Tex. App.—Tyler 2004, no pet.). An untimely notice is harmful if the accused was surprised by the evidence. ***Hernandez v. State***, 176 S.W.3d 821, 825-26 (Tex. Crim. App. 2005). It is also harmful if the lack of reasonable notice affected the accused's ability to mount an adequate defense, that is, affected his ability to prepare cross examination or present mitigating evidence. ***McDonald***, 179 S.W.3d at 579; ***Wallace***, 135 S.W.3d at 118-19.

## Discussion

First, the State argues that Appellant failed to preserve his challenge to the sufficiency of the 404(b) notice because the State presented evidence of Appellant's alleged extraneous offenses at trial without objection. Before the trial began, the State reminded the court of its intention to offer evidence of extraneous offenses. The court then heard the State's proffer of evidence as to the extraneous offenses, along with Appellant's initial objections. As relevant to this appeal, the State intended to offer evidence of a burglary of the Pulse Skate Shop on January 15, 2009, the robbery of an older woman at the East Texas Medical Center ("ETMC") on January 16, 2009, and the theft of an iPod charger on January 17, 2009. These offenses were allegedly part of a crime spree by Appellant, Watson, and to a lesser extent, Saur. Appellant initially had no complaint as to evidence of the Pulse Skate Shop burglary, but voiced objection to evidence of the ETMC robbery. The trial court continued the hearing until the following morning. When the hearing resumed, Appellant objected that he was provided insufficient notice of the State's intent to offer evidence of the three extraneous offenses. The trial court overruled his objection, concluding that the notice was timely and reasonable and met the requirements of rule 404(b). We hold that Appellant's objection was timely and specific. Therefore, Appellant properly preserved this issue. *See* TEX. R. APP. P. 33.1(a).

Turning to the merits of Appellant's complaint, we first note that the State chose not to introduce evidence of theft of the iPod charger. Therefore, although undisclosed, Appellant cannot show that he was harmed by evidence of a theft not introduced against him.

Next, with respect to the Pulse Skate Shop burglary, the State's 404(b) notice identified a burglary offense committed by Appellant "on or about the 17th day of January, 2009, in cause number 241-0484-09, in Smith County, Texas, the defendant committed the felony offense of Burglary of a Building." The date in the State's 404(b) notice incorrectly referred to the date of the Pulse Skate Shop burglary as January 17, 2009. That incident occurred on January 15, 2009. The offense in the instant case occurred on January 17, 2009, two days after the Pulse Skate Shop burglary. Police apprehended Appellant on January 17, 2009, and he remained in jail after that time, unable to commit further burglaries. Moreover, the State's witness list disclosed the identities of the skate shop owners with the words "Pulse Board Shop" in the address section. Finally, defense counsel admitted he had notice that the State intended to offer evidence related to that burglary. Specifically, defense counsel stated, "Judge, even though [the 404(b) notice] has the [Pulse Skate Shop] burglary of a building in there -- that's my mistake -- there's nothing in there about the theft and the [ETMC] robbery case, Judge." Therefore, we hold that the State satisfied rule 404(b)'s notice requirement as to the Pulse Skate Shop burglary.

As to the ETMC robbery, Appellant is correct that the State's 404(b) notice does not expressly identify the offense in question. The State argues, however, that the following disclosure in its 404(b) notice rectifies its failure to identify the ETMC robbery: "[a]nything contained in the discovery materials provided now or in the future with regard to any extraneous offenses, or bad acts which are mentioned or anything noticed in open Court or contained in motions filed with the Court."

Irrespective of whether the State's notice violated rule 404(b), a question we do not reach, we conclude that Appellant was not surprised, and therefore not harmed, by the introduction of evidence relating to the ETMC robbery. Prior to Appellant's trial in the instant case, the State produced transcripts of court proceedings against Watson from the ETMC robbery case, which disclosed Appellant's role in that robbery and the potential

4

witnesses against him.[2]  Moreover, the State's witness list in the instant case disclosed the ETMC robbery victim's identity.  Armed with this information, Appellant could not have been surprised by the evidence.  Appellant did not ask for a continuance or show how his defense strategy might have differed.  We do not condone the State's failure to expressly list the ETMC robbery in its rule 404(b) notice.  However, under the facts of this case, we hold that Appellant was not harmed by it.  *See **Hernandez***, 176 S.W.3d at 825-26.  Appellant's first issue is overruled.

## RULE 403 CHALLENGE TO EXTRANEOUS OFFENSE EVIDENCE

In his second issue, Appellant contends that the trial court abused its discretion by admitting evidence of the ETMC robbery because the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

**Standard of Review and Applicable Law**

The appellate court reviews the trial court's ruling on a rule 403 objection under an abuse of discretion standard.  ***State v. Mechler***, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).  An appellate court is not to reverse a trial court where its ruling was within the zone of reasonable disagreement.  ***Id.*** at 440.  The "test for whether the trial court abused its discretion is whether the action was arbitrary or unreasonable." ***Id.*** at 439.

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  TEX. R. EVID. 401.  Relevant evidence is generally admissible, while irrelevant evidence is inadmissible.  TEX. R. EVID. 402.

Rule 404 provides that "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."  TEX. R. EVID. 404(b).  Evidence of "other crimes, wrongs or acts" may be admissible if it has relevance apart from its tendency "to prove the character of a person in order to show action in conformity therewith."  TEX. R. EVID. 404(b).

---

[2] Although the timing is not entirely clear from the record, it appears that the transcripts were disclosed well in advance of Appellant's trial date.  Specifically, the trial court stated that the ETMC robbery transcripts "were provided to Defense counsel . . . [at] some date well prior to trial."  Defense counsel replied that "[y]eah, that is correct" and that "I did get copies of transcripts Volume 1 and 2" of the ETMC robbery case against Watson.

The permissible "purposes" for which evidence of "crimes, wrongs, or acts" may be introduced include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." TEX. R. EVID. 404(b). Extraneous offense evidence that logically serves any of these purposes is "relevant" beyond its tendency "to prove the character of a person in order to show action in conformity therewith," but may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." TEX. R. EVID. 403, 404(b). A proper rule 403 analysis includes, but is not limited to, four factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *Mechler*, 153 S.W.2d at 440.

**Discussion**

Appellant does not appear to challenge the admissibility of the evidence under rule 404(b). Rather, Appellant argues that the testimony and other evidence related to the ETMC robbery should have been ruled inadmissible by the trial court under rule 403 because any probative value that the evidence has is substantially outweighed by the danger of unfair prejudice.

Here, the ETMC robbery was committed the evening prior to the robbery of Brown in the instant case. Appellant and Watson acted together in both robberies. Both robberies were committed against lone, older women using surprise, speed, and strength through force or the threat of force. Both robberies were committed while using the same vehicle, a red Jeep, as a means of escape. In addition to the presence of Saur in the instant case, the primary difference between the robberies is that Appellant was allegedly the primary actor in the ETMC robbery, while Watson was the primary actor in the robbery of Brown. Therefore, the probative value of the evidence is great, because it demonstrates that Appellant and Watson acted together in a continuing criminal enterprise, the robbery of older women. Consequently, this evidence rebutted Appellant's defensive theory that he was not a party to the offense in the instant case, but was merely present in the Jeep while the robbery transpired.

Although there was the potential that the jury might have been confused by testimony of these similar crimes, the State and defense counsel carefully separated the offenses during the questioning of the witnesses testifying about the ETMC robbery.

6

This evidence did not likely impress the jury in an irrational or indelible way because the evidence actually served to explain Appellant's role in this crime by demonstrating the pattern of Appellant and Watson's criminal conduct. This evidence was important to the State's case, because Appellant's theory was that he was merely present in the Jeep, and was unaware that a robbery was about to occur. Defense counsel pursued this theory vigorously throughout the trial and in jury argument. Upon a careful review of the record, we conclude that the trial court did not abuse its discretion in overruling Appellant's rule 403 objection. Appellant's second issue is overruled.

### FACTUAL SUFFICIENCY OF THE EVIDENCE

In his third issue, Appellant argues that the evidence is factually insufficient to support his conviction.

**Standard of Review**

In conducting a factual sufficiency review, we look at the evidence in a neutral light. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). A verdict will be set aside if the evidence supporting the conviction, although legally sufficient, is so weak that the jury's determination is clearly wrong and manifestly unjust, or if there is some objective basis in the record that shows the great weight and preponderance of the evidence contradicts the jury's verdict. *Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006). A clearly wrong and unjust verdict occurs where the jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Berry*, 233 S.W.3d at 854.

Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the jury's determinations. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). It is not enough that we might harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence. *See Watson*, 204 S.W.3d at 417.

**Applicable Law**

A person commits the offense of robbery if, "in the course of committing theft ... he intentionally, knowingly, or recklessly causes bodily injury to another" or "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02(a)(1)-(2) (Vernon 2003). A person commits the offense of aggravated robbery if, in the course of committing a robbery, he uses or exhibits a deadly weapon, or causes bodily injury to, or threatens or places a person 65 years of age or older in fear of imminent bodily injury or death. *Id.* § 29.03(a)(2)-(3) (Vernon 2003).

An individual is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2003). A party may be criminally responsible as a party in several ways. *See id.* §§ 7.01-.02 (Vernon 2003). As pertinent here, a person is criminally responsible for an offense committed by another if, acting with intent to promote or assist the commission of the offense, the person solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2). When a party is not the primary actor, the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985); *Miller v. State*, 83 S.W.3d 308, 313 (Tex. App.—Austin 2002, pet. ref'd). Although a factor to be considered, mere presence alone is not sufficient to support a conviction under the law of parties. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979).

"Evidence that a person is a party to an offense may be entirely circumstantial, but the evidence must show that the parties were acting together to accomplish their common purpose." *Hayes v. State*, 265 S.W.3d 673, 681 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). "Any agreement to accomplish a common purpose must have been made before or contemporaneously with the criminal event, but in determining participation in an offense, the court may examine events that occurred before, during, and after the offense was committed." *Id.* at 681-82. Finally, while flight alone will not support a guilty verdict, evidence of flight from the scene of a crime is a circumstance

8

from which an inference of guilt may be drawn. ***Valdez v. State***, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979).

**Discussion**

Appellant argues that the only evidence to connect him to the offense is that (1) "Appellant laughed when Watson drove off to chase Brown," (2) "Appellant ducked down while Watson and Saur committed the offense," (3) "Appellant told Watson he was 'stupid' after he committed the offense," and (4) "Appellant ran when Watson wrecked the Jeep." Consequently, he argues he was merely present during the offense and is not criminally responsible under the law of parties. Therefore, he concludes the evidence is factually insufficient to support the verdict.

However, the evidence reveals that Saur told Watson she saw Brown in the convenience store and that Brown had a large amount of money. Watson then told Appellant to enter the Jeep so that they could follow Brown. Watson gave Appellant a "look," immediately followed by a "laugh" from Appellant, which Watson implicitly took to mean that Appellant knew that a robbery would likely take place. Saur, riding along for her first robbery, testified that she knew immediately that they would soon rob Brown, and that Appellant likely reached the same conclusion. Less than a minute later, Brown entered a parking lot and Watson blocked her escape with the Jeep. Appellant then concealed his presence in the Jeep by "ducking" in the seat. This act was an attempt to conceal how many people were in the car so as to evade identification by the police.

Moreover, right after the robbery, all three individuals were actively seeking suitable license plates to switch with those on the Jeep, as they had in the prior ETMC robbery. This plan, in which Appellant played a part, also assisted in their escape. Watson testified that during the high speed chase, Appellant encouraged their escape because he did not want to get "locked back up." Once they abandoned the vehicle, Appellant and Watson fled together. During their escape, Watson and Appellant heard what they believed to be a gunshot resulting in the death of Saur. Although this bore no relationship to reality, Watson cried. In an effort to calm Watson and to help motivate him to assist in their joint escape, Appellant told Watson "in five minutes or an hour, if I'm not at my girl's house, I lost my girl, too." Finally, they used the proceeds of the robbery to buy food and to pay for a ride back to their homes.

9

From this evidence, the jury was entitled to find that Appellant knew of the robbery plan, took an active part in its commission, and actively participated in their escape. This evidence, in conjunction with the extraneous offenses, such as the very similar ETMC robbery, demonstrated that Appellant and Watson were partners in a criminal enterprise designed to rob older women, making it more likely that Appellant participated in the robbery against Brown. Therefore, the evidence is factually sufficient to support the verdict. Appellant's third issue is overruled.

## DISPOSITION

We *affirm* the judgment of the trial court.

**SAM GRIFFITH**

Justice

Opinion delivered August 25, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)