Sherman Louis HOUSTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–91–224–CR.

Court of Appeals of Texas, Waco.

June 17, 1992.

Phil Robertson, Robertson & Robertson, Clifton, for appellant.

Andy J. McMullen, Dist. Atty., Hamilton, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

A jury convicted Sherman Houston of the aggravated sexual assault of Nicky D., an eleven-year-old girl, and assessed his punishment at fifty years in prison. His only complaint is that the court improperly admitted evidence that he had taken nude pictures of Nicky and his own daughter shortly before he committed the offense. He contends the evidence had no relevance apart from showing his character and, even if it were relevant to the sexual assault, its potential for unfair prejudice substantially outweighed its probative value. *See* TEX. R.CRIM.EVID. 401, 403, 404(b). We affirm.

## NICKY'S TESTIMONY

Houston and his family and Nicky and her family were camping together at Lake Whitney when the offense occurred. Nicky testified that Houston invited her, her nine-year-old sister (Christy), and Houston's daughter (Tina) to ride in his car to the store to buy ice. Before they reached the store, Houston stopped the car and retrieved a Polaroid camera from the trunk. He then had Tina and Nicky pull their swimsuits to one side while he took two photographs of their vaginal area and buttocks. Christy handed the photographs to Nicky, who tried to hide them by stuffing them into the folds of the back seat where she and Tina were sitting. Nicky planned to destroy the hidden pictures when they returned to camp. Once they reached the store, however, Houston found and kept the pictures in his possession.

When the children and Houston returned from the store, Christy and Tina went to the lake to swim while Nicky remained at the camp site to eat lunch. After finishing eating, Nicky started along a trail leading to the cove where Christy and Tina were swimming. She described what happened:

[DISTRICT ATTORNEY'S QUESTIONING]:

Q  When you started walking down the trail, did something happen?

A  Yes.

Q  What happened?

A  Sherman [Houston] stopped me.

Q  Okay. Did he stop you where your parents could see you?

A  No.

Q  All right. And once he stopped you, what did he do?

A  He started talking to me.

Q  What did he say to you?

A  *He told me that if he—if I came up to the car with him, then he would give me the pictures back.*

Q  *Uh-huh. Did you go with him?*

A  *Yes, I did.*

Q  *Did—was he holding you when you went up there?*

A  *No.*

Q  And where did you go?

A  We stopped at—where a little white building is.

Q  Is—is this on a trail?

A  Yes.

.        .        .        .        .

Q  What happened?

.        .        .        .        .

A  *He told me that if I let him lick my private, then he would give me the pictures back.*

(Emphasis added). Nicky then described how Houston forced her into the white building, pulled down the bottom of her swimsuit, and put his mouth on her vagina.

Christy, who saw the photographs taken, also testified about the picture-taking episode but not about the sexual assault. The State introduced Houston's confession in which he admitted taking the pictures.

(The record does not reflect the length of time between the photographs being taken and the sexual assault). All of this evidence was admitted over defense objections based on Rule 404(b) and Rule 403 of the Rules of Criminal Evidence. *See id.* at 403, 404(b).

## SAME–TRANSACTION CONTEXTUAL EVIDENCE

■ The Court of Criminal Appeals has labeled evidence of extraneous offenses indivisibly intertwined with the charged offense as "same transaction contextual evidence."[1] *Mayes v. State,* 816 S.W.2d 79, 86 (Tex.Crim.App.1991). Same-transaction evidence refers to separate offenses that are "intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others." *Id.* at 86–87 n. 4. Offenses are intertwined in the same transaction if "in narrating the one it is impracticable to avoid describing the other." *Id.* at 87 n. 4. Evidence of all the offenses in the same transaction is admitted out of necessity—you cannot practicably separate one from the other. *Id.*

The facts and circumstances of the charged offense are relevant evidence. *Id.* at 85; TEX.R.CRIM.EVID. 401. Evidence of how events of the charged offense unfolded and progressed is necessary for the jury to have a full picture and understanding of what took place. *Mann v. State,* 718 S.W.2d 741, 744 (Tex.Crim.App.1986). Consequently, the State was entitled to prove all of the facts and circumstances surrounding the sexual assault, everything that Houston said and did, including how he used the nude photographs to lure Nicky to where she was sexually assaulted and how he tried to use them to get her to submit to the sexual assault. In fact, had they been available at trial, the State could have introduced the photographs into evi-

dence because Houston had used them as a ploy and inducement to commit the sexual assault. *See White v. State,* 137 Tex.Crim. 481, 131 S.W.2d 968, 969 (1939) (holding that a book of lewd photographs seized from the defendant at his arrest was admissible in his trial for attempted rape if he had used the book in any way in committing the charged offense). Moreover, because evidence of the photographs was admissible to show the facts of the charged offense, the jury could consider evidence of the photographs as an aggravating factor in assessing Houston's punishment for the sexual assault. *See Wilkerson v. State,* 736 S.W.2d 656, 660 (Tex.Crim.App.1987).

Nicky could not practicably narrate the relevant facts and circumstances surrounding the charged offense without mentioning the nude pictures. This is a classic example of same-transaction contextual evidence. The two offenses became inextricably intertwined through Houston's own words and acts, and the State was entitled to prove both, not only by Nicky's and Christy's eye-witness testimony but by Houston's confession. The amount of time elapsing between the picture-taking episode and the sexual assault did not make the evidence inadmissible as the two offenses were indivisibly intertwined.

## RULE 404(B) IS INAPPLICABLE

■ Rule 404(b), which prohibits the state from introducing evidence of other crimes to show the defendant's bad character and his "propensity" to commit criminal acts, does not limit or govern the admissibility of same-transaction evidence. TEX.R.CRIM.EVID. 404(a), (b). Same-transaction evidence is admitted as an exception to the "propensity rule." *Mayes,* 816 S.W.2d at 86 n. 4. The exception necessarily exists because evidence of an extraneous offense intertwined with the charged offense is admitted out of *necessity*—i.e., the offenses cannot be practicably separated in proving

---

**1.** The Court of Criminal Appeals notes that the Fifth Circuit has held that offenses inextricably intertwined with the charged offense are not "extrinsic" within the meaning of Rule 404(b) of the Federal Rules of Criminal Evidence. *Wilk-*

*erson v. State,* 736 S.W.2d 656, 660 n. 2 (Tex. Crim.App.1987) (citing *United States v. Sepulveda,* 710 F.2d 188, 189 (5th Cir.1983); *United States v. Simpson,* 709 F.2d 903, 907 (5th Cir. 1983)).

the charged offense—"and not because the [extraneous offense] has any evidential purpose." *Id.* at 87 n. 4. Rule 404 controls the admission of evidence with an evidentiary purpose apart from the defendant's character—evidence that not only must be relevant to a consequential fact but whose relevance is not substantially outweighed by its potential for prejudice. *Id.* at 86.

Thus, because the evidence was admitted as an exception to Rule 404, the State was not required to assert or prove that it had a relevance apart from character conformity. The court properly overruled Houston's Rule 404(b) objections.

### RULE 403 BALANCING TEST

■ When the court overruled his Rule 404(b) objections, Houston then objected to the evidence under Rule 403:

> [DEFENSE COUNSEL]: Okay. Judge, then I would further object on the basis under Rule 403 that the—that the—well, Judge, may I have permission of the Court to—to—for purposes of my objection to get in two witness statements that show it's—show it [the picture-taking episode] happened from an hour and a half to three and a half hours difference in time?
>
> THE COURT: Counsel, I don't have that before me. I don't know ...
>
> [DEFENSE COUNSEL]: Well, Judge, I would ask for—also object to it on the basis of—under Rule 403 that its probative value is outweighed by its—by its prejudicial nature, *would request a hearing on that.*
>
> THE COURT: Overruled. It's admitted—
>
> [DEFENSE COUNSEL]: *Are you denying me a hearing?*
>
> THE COURT: Yes, sir.

(Emphasis added). The following appears twenty pages later in the statement of facts, after the court has again overruled an objection under Rule 404(b):

> [DEFENSE COUNSEL]: Judge, then I would ask for a ruling under—I object to them on—object on any testimony on—concerning those pictures and events

around them, because they are—that their probative value is greatly outweighed by their ... prejudicial nature *and I would request a hearing on that.*

> THE COURT: Overruled.
>
> [DEFENSE COUNSEL]: Overrule my 403 objection and my request for a—
>
> THE COURT: That's correct—
>
> [DEFENSE COUNSEL]: *—for a hearing for—a determination hearing?*
>
> THE COURT: That's correct.

(Emphasis added). Again, six pages later:

> [DEFENSE COUNSEL]: Your Honor, I would like to renew my objection to extraneous offenses and also ... *also renew my request for a hearing outside the presence [of the jury] on prejudicial versus probative value.*
>
> THE COURT: Overruled.

(Emphasis added).

He contends that the court refused to perform the balancing test required by Rule 403 and that, even if the test had been performed, the evidence should have been excluded based on its potential for unfair prejudice.

When evidence of an extraneous offense is admissible to show the res gestae or context of the charged offense—now renamed "same transaction contextual evidence"—the court must still balance its probative value against the potential for unfair prejudice. Tex.R.Crim.Evid. 403; *Mann,* 718 S.W.2d at 744. "Rarely," however, will its prejudicial potential make it inadmissible. *E.g., Wilkerson,* 736 S.W.2d at 660; *Mann,* 718 S.W.2d at 744; *Maynard v. State,* 685 S.W.2d 60, 67 (Tex.Crim. App.1985).

The Court of Criminal Appeals outlines in *Montgomery v. State,* 810 S.W.2d 372, 389–90 (Tex.Crim.App.1990) (on rehearing), the responsibilities of the trial court once a Rule 403 objection is made and *suggests* a procedure to facilitate appellate review of its decision:

● The trial court has no discretion to refuse a request to conduct a balancing test—the balancing test is mandatory. *Id.* at 390.

● The trial court must apply the factors used to determine probative weight versus prejudicial potential to the facts of the case. *Id.* (referring to the factors listed on pages 392–93 of the *Montgomery* opinion).

● Appellate review would be "facilitated" by the trial court's listing in the record the considerations that governed its decision. *Id.* at 393 n. 4.

The Court of Criminal Appeals does not require the trial court to conduct the balancing test during a formal hearing held for that purpose or that it announce for the record that it has, in fact, conducted and completed the balancing test in its own mind. Although not requiring the procedure, the *Montgomery* court merely recognizes that appellate review would be made easier if the trial court would list the reasons for its decision in the record. *Id.*

Houston was requesting a formal hearing, presumably for the court to formally balance the evidence and declare the result. That is what the court denied. As noted above, *Montgomery* does not require or even suggest that the court must conduct such a hearing. The record affirmatively reflects that the court, after hearing the Rule 403 objection, considered and overruled it. It did not refuse to consider or rule on the objection, which would have indicated that it was refusing to perform the balancing test.

That the court did not announce before ruling on the objection, "I'm now considering the objection and mentally balancing the evidence to determine whether its prejudicial value substantially outweighs its probative weight," and "I've now completed the balancing test and announce my decision by overruling the objection," does not mean that it did not consider the objection, balance the evidence, and by overruling the objection find that the scales tipped in favor of probative value. The trial court necessarily performed the balancing test when it heard the objection, considered it, and overruled it. The record does not indicate otherwise.

Evidence of the nude pictures was relevant to the sexual assault and, as such, is presumed to be admissible under Rule 401. *See id.* at 390. Whether the court properly admitted the evidence under the balancing test is measured by an abuse-of-discretion standard. *See id.* at 391. Although reviewable on appeal, we must defer to the trial court's ruling if its determination is "within the zone of reasonable disagreement." *See id.* To do otherwise would be to substitute our judgment for that of the trial court.

Giving due deference to the court's ruling and because same-transaction evidence relating to an extraneous offense is only rarely excluded due to its prejudicial effect, we hold that the court did not abuse its discretion in admitting the evidence. The court's determination is "within the zone of reasonable disagreement."

We overrule all points and affirm the judgment.

VANCE, J., dissenting.

VANCE, Justice, dissenting.

Houston complains that evidence of extraneous offenses was admitted over his objections. *See* TEX.R.CRIM.EVID. 401, 403, 404(b). The evidence came from three sources: Houston's written statement, testimony of the complainant, and testimony of the complainant's sister.

## RULES OF EVIDENCE

Before reciting the facts of the offense and the evidence that Houston complains of, a review of the rules of evidence concerning "other crimes, wrongs, and acts" will be helpful. *See id.* at 404(b).

CONDUCT INCLUDED IN THE SCOPE OF RULE 404(b)

Rule 404(b) does not speak of "extraneous offenses"; rather, it limits the admissibility of "other crimes, wrongs, or acts." *Id.* An extraneous offense is any act of misconduct, whether resulting in prosecution or not, which is not shown in the charging paper and which is shown to have been committed by the accused. *Hernandez v. State*, 817 S.W.2d 744, 746 (Tex. App.—Houston [1st Dist.] 1991, no pet.); *Gomez v. State*, 626 S.W.2d 113, 114 (Tex. App.—Corpus Christi 1981, pet. ref'd).

Thus, an extraneous offense is by definition an "other crime." But the rule does not stop there. It also limits the admissibility of "other wrongs" and "other acts." An example was presented in *Mayes v. State*, where the objectionable evidence was proof that Mayes was, at the time of the offense, confined in "administrative segregation" in the prison. *Mayes v. State*, 816 S.W.2d 79, 85 (Tex.Crim.App. 1991).

### BACKGROUND EVIDENCE

Generally the State is entitled to introduce evidence of the facts and circumstances of an offense, i.e., the "background evidence." *Id.; Burns v. State*, 556 S.W.2d 270, 282 (Tex.Crim.App.1977), *cert. denied*, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977). Such evidence is "relevant" in the sense that it illuminates circumstances otherwise dimly perceived by the factfinder. *Mayes*, 816 S.W.2d at 85. However, *Mayes* held that evidence of other crimes, wrongs, or acts may not be admitted on the sole justification that it is "background" evidence. *Id.* at 88. The admission of character evidence on the rationale that it is "background" evidence helpful to a jury conflicts with the proscription of Rule 404(b)—character evidence is not admissible as an "other purpose" under the rule. *Id.;* TEX.R.CRIM.EVID. 404(b).

### SAME TRANSACTION CONTEXTUAL EVIDENCE

"Same transaction contextual evidence" of other crimes is admissible as an exception to the propensity rule where several crimes are intermixed, blended with one another, or so connected that they form an indivisible criminal transaction *and* full proof by testimony, whether direct or circumstantial, of any one of them cannot be made without showing the others. *Mayes*, 816 S.W.2d at 86 n. 4; *see also Taylor v. State*, 420 S.W.2d 601, 605 (Tex.Crim.App. 1967) (holding that testimony that Taylor, who was charged with the murder of Lucia Etter, had also killed Fritz Etter, who was riding in the same pickup as Lucia, was properly admitted because the other offense was "part of the case on trial, or blended or closely interwoven therewith"). The exception exists because in narrating the offense on trial it is impracticable to avoid describing the other offense, not because the other offense has any evidentiary purpose. *Mayes*, 816 S.W.2d at 87 n. 4.

### OTHER CRIMES, WRONGS OR ACTS

When the State attempts to adduce evidence of "other crimes, wrongs, or acts," the defendant must object in a timely fashion to preserve his complaint for appeal. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App.1991) (on rehearing). After objection, the State must satisfy the court that the other crime, wrong, or act has relevance apart from its tendency to prove the defendant's character to show that he acted in conformity therewith. TEX.R.CRIM. EVID. 404(b). If the court determines that the evidence has no relevancy apart from character conformity, then it is inadmissible. *Montgomery*, 810 S.W.2d at 387.

The State may, however, persuade the court that the evidence has relevance apart from character conformity, i.e., that an "other purpose" such as those set forth in Rule 404(b) will be served by admission of the evidence. *Id.* at 387–88; TEX.R.CRIM. EVID. 401, 404(b). Upon a defendant's request, the State should articulate the purpose for which the evidence is offered, and the court should articulate the reason for its admission. *Montgomery*, 810 S.W.2d at 387.

Upon further objection that the relevancy of an extraneous offense is substantially outweighed by any of the factors listed in Rule 403, usually unfair prejudice, the court *must* engage in the balancing process. *Id.* at 389; TEX.R.CRIM.EVID. 403. Factors that may be used in the balancing process include (1) the inherent probative value of the evidence, (2) the similarity of the conduct to the offense on trial, (3) the strength of the evidence of the extraneous conduct, (4) the nature of the extraneous conduct and its potential for impressing the jury in irrational, but indelible ways, (5) the trial time necessary to develop the evidence, giving consideration to whether the jury's attention will be diverted from the offense on trial, and (6) the State's "need" for the evidence including (a) the availability of other evidence which tends to accom-

plish the same "other purpose," (b) the strength of the other evidence, and (c) whether the purpose served by the admission of the extraneous conduct relates to an issue that is in dispute. *Id.* at 389–90. Because of the presumption that probativeness outweighs prejudice, a defendant bears the burden of demonstrating how the negative attributes of the evidence substantially outweigh its probative value. *Id.*

If a determination is made that the evidence is admissible, the court should, upon request, instruct the jury that the evidence is limited to whatever purpose will be served by its admission. *Id.* at 387–88; TEX.R.CRIM.EVID. 105(a).

## THE OFFENSE

Houston was charged with the sexual assault of N.D. by placing his mouth against her vagina. The offense occurred while his family was on an outing with N.D.'s family at Lake Whitney. Soon after they arrived at the lake, Houston took N.D., her sister C.D., and his daughter C.W. to a nearby store. After they returned and after lunch, N.D. started walking down a trail. Houston stopped her, and they went to a little white building. She testified that Houston told her that he would let her have some pictures that he had taken on the way to the store if she would "let him lick [her] private." He pulled her inside the building, held her against the wall, pulled her bathing suit down, and "put his mouth on [her] vagina." As she was pulling her bathing suit up, her father arrived and told her to go tell her mother what had happened. The families, who lived in the same trailer park, continued to see each other. Houston was arrested more than one year later and gave a voluntary statement admitting the offense.

## THE DISPUTED EVIDENCE

N.D. testified that, while she, Houston, C.D., and C.W. were in the car going to the store, Houston stopped and got a camera from the trunk. He told the girls that he would give them five dollars and buy them "candy and stuff" if they would pose for nude pictures. He took pictures while N.D.

and C.W. pulled their bathing suits to one side, exposing their vaginas. C.D. did not participate in the picture-taking. Houston did not give them any money, but bought candy for N.D. and C.W. He did not buy C.D. anything.

C.D. testified to the events that occurred on the way to the store. She gave no testimony about the facts of the assault. Houston's statement also contained references to the events surrounding the picture-taking.

Each time evidence of these events was offered, Houston objected on the basis that the testimony concerned extraneous offenses prohibited by Rule 404(b) and that its probative value was outweighed by the prejudicial nature of the testimony. The record does not reveal that the State made any attempt to persuade the court that the evidence had relevance apart from character conformity. However, the State's brief states:

"The evidence complained of by Appellant was not evidence of unrelated offenses. They were occurrences that were intimately connected with the events surrounding the commission of the primary offense. Events do not occur in a vacuum; and the jury had a right to hear what occurred immediately prior to the commission of the offense, so that the jury could realistically evaluate the evidence."

## APPLICATION OF LAW TO FACTS

The court did not have the benefit of the *Mayes* decision, because Houston was tried shortly after the opinion in *Montgomery* and before *Mayes* was decided. *Mayes*, 816 S.W.2d 79; *Montgomery*, 810 S.W.2d 372. Nevertheless, the rules enunciated in *Mayes* are applicable, as well as those found in *Montgomery*. *See id.*

I do not believe that the admission of the evidence of picture-taking can be justified under the "same transaction contextual evidence" exception to Rule 404(b). *See Mayes*, 816 S.W.2d at 86 n. 4. The events surrounding the picture-taking and the events that constituted the offense were separated by time and by distance. The

picture-taking occurred before lunch and on the way to the store; the assault occurred after lunch and "down the trail." Thus, it was not impracticable for N.D. to narrate the events surrounding the assault without describing the picture-taking. *See id.* at 87 n. 4. The fact that N.D.'s sister, C.D., testified only about the picture-taking demonstrates that the two events were not so "intermixed," or "blended," or "connected" as to form an indivisible criminal transaction, such that testimony of the assault could not be given without describing the picture-taking.[1] *See id.* As the footnote to *Mayes* suggests, it was not "necessary" for the State to prove the picture-taking to prove the assault. *See id.* (citing *Solosky v. State*, 90 Tex.Crim. 537, 236 S.W. 742 (1922), where, in a prosecution for unlawfully carrying a pistol, the court describes the use of the pistol as "so intermingled with those [facts] that it was necessary for the state to prove, in order to make out its case, that the development of the essential facts would have been difficult, if not impossible, without revealing the acts of the appellant in the use of the pistol").

The evidence of picture-taking was not admissible as "background evidence." *See Mayes*, 816 S.W.2d at 88. The admission of character evidence on the rationale that it is "background" evidence helpful to a jury conflicts with the proscription of Rule 404(b)—it is not admissible as an "other purpose" under the rule.[2] *Id.;* TEX.R.CRIM. EVID. 404(b).

Houston objected to the inclusion of evidence of the picture-taking when his statement was admitted into evidence. When N.D. and C.D. testified about the picture-taking, Houston's statement admitting guilt of the assault was already in evidence. The State did not assert, and the court did not find, that the evidence had relevance apart from character conformity, i.e., that an "other purpose" such as those set forth in Rule 404(b) would have been served by admission of the evidence. *See* TEX.R.CRIM.EVID. 404(b); *Montgomery*, 810 S.W.2d at 387–88. The court did not engage in the balancing process required after an objection under Rule 403. *See* TEX. R.CRIM.EVID. 403; *Montgomery*, 810 S.W.2d at 389.

Thus, I would sustain Houston's points one through four.

### WAS THE ERROR HARMLESS?

I cannot determine beyond a reasonable doubt that the admission of the evidence of picture-taking made no contribution Houston's punishment. *See* TEX.R.APP.P. 81(b)(2). In applying the "harmless error" rule, the focus is not on the propriety of the trial's outcome but on the integrity of the process. *See Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989). It is necessary to examine the source of the error, the nature of the error, whether or

---

1. I cannot agree, as the majority suggests, that the pictures themselves would necessarily have been admissible at trial, had they been available. They did not tend to make the existence of any fact of consequence any more or less probable. *See* TEX.R.CRIM.EVID. 401, 402. They were evidence of the extraneous offense. *See id.* at 404(b). And they would have been subject to an objection under Rule 403 that their probative value was substantially outweighed by their prejudicial nature. *See id.* at 403. In view of the fact that Houston admitted the offense in his written statement, the objection could well have prevailed because (1) the probative value of the pictures as tending to prove any element of the offense would be negligible, (2) the pictures would tend to impress the jury in irrational, but indelible ways, (3) the potential for diverting the jury's attention from the offense on trial would be great, and (4) the State's "need" for the pictures would be limited. *See id.* at 403; *Mont-*

*gomery v. State,* 810 S.W.2d 372, 389–90 (Tex. Crim.App.1991).

2. In my view, the rationale "that events do not occur in a vacuum and the jury has a right to have the offense placed in its proper setting so that all evidence may be realistically evaluated," previously used to justify admission of evidence relevant only "in the sense that it illuminates circumstances otherwise dimly perceived by the factfinder," is now limited to background events which do not constitute evidence of "other crimes, wrongs, or acts." TEX.R.CRIM.EVID. 401, 404(b); *Mayes,* 816 S.W.2d at 85, 88. Thus, cases like *Mann v. State,* 718 S.W.2d 741 (Tex. Crim.App.1986) holding that testimony about extraneous offenses was admissible if part of the res gestae or background were, by implication, overruled by the *Mayes* holding that such a rule conflicts with the proscription of Rule 404(b). *Id.*

to what extent the State emphasized it, and its probable collateral implications. *Id.* The error and all its effects must be isolated, using these considerations and any other considerations suggested by the facts of the case. *Id.* Consideration must be given to how much weight a juror would probably place on the error, and ask whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *Id.*

The error that I perceive in admitting evidence of the picture-taking cannot be said to have contributed to Houston's conviction; he admitted the assault in his written statement and does not challenge the statement on appeal. At the punishment phase, however, the State made no opening statement and announced, "No additional evidence, Your Honor." Thus, the State produced no evidence of a criminal record, Houston's general reputation, his character, or any other evidence relevant to sentencing. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1992). Houston offered evidence that he had completed a substance-abuse treatment program, that he had never been convicted of a felony in any state or federal jurisdiction, that he had been honorably discharged from the army, and that he had been baptized while in jail awaiting trial for the assault.

The punishment-phase charge stated: "[I]n fixing the Defendant's punishment ..., you may take into consideration all the facts shown by the evidence admitted before you in the full trial of this case...." Thus, the jury was instructed that it could consider the picture-taking in assessing Houston's punishment. During the guilt-innocence phase, evidence of the picture-taking was admitted in three ways. As stated, C.D. testified only about the extraneous offense. The State spent a considerable amount of the total trial time proving the extraneous offense and made arguments to the jury about the picture-taking during both the guilt-innocence and punishment phases of the trial. Under the facts of this case, I believe that a juror might place undue weight on the prejudicial aspects of the picture-taking and that the effect of the error was such that the

process whereby the jury applied the law to the facts to reach a verdict during the punishment phase was compromised, resulting in a fifty-year sentence. *See Harris,* 790 S.W.2d at 587–88. Thus, I cannot determine beyond a reasonable doubt that the evidence of the picture-taking made no contribution to Houston's punishment. *See* TEX.R.APP.P. 81(b)(2).

I would reverse the judgment and remand the cause to the trial court.