NO. 12-00-00178-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


TERRY LEE MCMAHAN,
§
 APPEAL FROM THE 241ST

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

PER CURIAM


 Appellant Terry Lee McMahan ("Appellant") appeals his conviction by a jury for aggravated
robbery. He complains that the trial court erred when it did not allow him to impeach a State's
witness with prior convictions, and of the sufficiency of the evidence. We affirm.


Background

 After being indicted for the aggravated robbery of Charles Ray Myles ("Myles"), Appellant
entered his plea of not guilty. During trial, Appellant asked that he be allowed to impeach State's
witness Ray Arterberry ("Arterberry") with three prior felony convictions. After argument by both
parties, the trial court denied the request. Appellant was subsequently found guilty by the jury,
which sentenced him to confinement for twenty-three years. 


Legal Sufficiency

 In his first issue, Appellant complains that there is not legally sufficient evidence to support
his conviction. In reviewing a legal sufficiency question, we must view the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); Whitaker v. State, 977 S.W.2d 595, 598 (Tex. Crim. App.
1998); Mason v. State, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995). 

 A person commits the offense of aggravated robbery if, in the course of committing theft, he
intentionally, knowingly, or recklessly causes bodily injury to another and he uses or exhibits a
deadly weapon. Tex. Pen. Code Ann. §§ 29.02, 29.03 (Vernon 1994). 

The Evidence

 Myles testified that on February 16, 1996, he was living in a boarding house in Tyler. On
that particular day, he purchased two cases of beer and had a party in his room, at which Appellant
was present. The party later moved to Appellant's room. After all the other guests had departed, 
Appellant said he would walk Myles back to his room because he wanted to ask him something. 
After Myles opened the door and walked into his room, Appellant hit him in the back of the head
with a hard object. After the blow, Myles fell and Appellant began hitting his head against the floor. 
At some point during the scuffle, Myles felt Appellant's hand go into his pants pocket. Myles
testified that Appellant stole fifty to sixty dollars from him. While Appellant was on top of Myles,
Ray Arterberry came into the room. Appellant got off of Myles and Arterberry proceeded to help
Myles. Arterberry called an ambulance and the police. Myles was taken to the hospital, where he
was treated for a head laceration.

 Arterberry testified that he heard a disturbance from Myles' room. He went to investigate,
and saw Myles on the floor, bleeding from the head, attempting to crawl under his bed. When
Arterberry opened the door all the way, he saw Appellant standing in Myles' room with a lug wrench
or a crow bar in his hand. He asked Appellant what he was doing there, and Appellant replied that
he had found Myles like that. Arterberry picked Myles up and took him to his room. He then called
an ambulance and the police.

 Tyler Police Officer Steven Risinger ("Risinger") testified that he arrived at the scene and
spoke to both Myles and Arterberry, who were on the porch of the boarding house. Myles stated he
was hit by a white man. Arterberry told Risinger that he had gone to Myles' room and saw Appellant
standing over Myles with a pry bar in his hand. During the investigation, Risinger found Appellant's
wallet in Myles' room. When he went to the room next to Appellant's, thinking that it belonged to
Appellant, Appellant came out of the room next door and said, "I think you're looking for me." 
Appellant gave Risinger consent to search his room, at which time Risinger located a hammer which
appeared to have blood on it. Risinger further testified that a hammer is similar to a pry bar, that it
is a hard object, and that in the manner and means of its use, it could cause serious bodily injury or
death.

 David Hilbig, Criminalist for Texas Department of Public Safety Crime Lab, ("Hilbig")
testified that he tested the substance on the hammer, and that it was conclusively established as
human blood.

 Dr. Robert Creath, Chief of Emergency Services at East Texas Medical Center, testified that
a hammer was capable of causing the injury to Myles. He also stated that Myles' injury was more
consistent with being hit with a blunt object rather than with falling and hitting his head on
something. 

 Captain Marvin Wintters of the Smith County Sheriff's Department testified that when
Appellant was released on bond, he fled the jurisdiction three times - once to Arizona, and twice to
the state of Washington. 

 We hold that in viewing the evidence in the light most favorable to the verdict, as we have
done above, a rational trier of fact could have found the essential elements of aggravated robbery
beyond a reasonable doubt. 


Factual Sufficiency

 In a challenge to the factual sufficiency of the evidence, this court views the evidence without
employing the prism of "in the light most favorable to the verdict." See Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996). Therefore, the court must consider all of the evidence, comparing
evidence that tends to prove the existence of the disputed fact or facts with evidence that tends to
disprove that fact or those facts. See Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App.
1997). The jury's verdict is set aside only when the factual finding is against the great weight and
preponderance of the evidence so as to be manifestly unjust. Clewis, 922 S.W.2d at 135.

 The jury is the exclusive judge of the credibility of witnesses and of the weight to be given
their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Likewise,
reconciliation of conflicts in the evidence is within the exclusive province of the jury. Losada v.
State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). 

The Evidence

 In addition to the statements described above, Risinger testified that when he arrived at the
boarding house, Myles and Arterberry were on the porch waiting for the police and ambulance. 
Myles gave Risinger two statements - one at the scene, and one at the hospital. Myles did not
mention that Appellant stole his money until the second statement. When Risinger searched
Appellant and his apartment, he did not locate any money or bloody clothing. He never found a lug
wrench, a crow bar or a pry bar, and the hammer was in plain sight in the corner of Appellant's
room. In fact, Appellant pointed it out to him. Risinger also testified that when he originally spoke
to Arterberry, he stated that he had been partying with Myles and Appellant.

 Myles testified that when Appellant attacked him, he screamed for help. When Arterberry
came into the room, Appellant got off of him. When he was being helped up by Arterberry, Myles
did not see anything in Appellant's hand. Arterberry took Myles to his room and left him there while
he called the police and an ambulance. Myles admitted that in his statement to the police, he said
that Appellant banged his head against the floor. But when he told hospital personnel what had
happened to him, he said that Appellant had tried to choke him. 

 Arterberry testified that if Risinger wrote in his report that Arterberry had been at Myles'
party, it was done in error. He also stated that when he saw Appellant in Myles' room, he was
holding what he believed was a crow bar or something similar. He agreed that it could have been
a hammer, but that he could not be sure. Arterberry admitted that he may have been under the
influence of drugs or alcohol when the assault occurred, but that he simply could not remember. 
 Hilbig testified that there was not enough blood on the hammer to conduct a DNA test, so
could not tell if the blood belonged to Myles. He also stated that if someone had wiped the hammer
clean, there was a good possibility that he would have found fibers on it, but there were none. Hilbig
also admitted that he could not tell when the blood got on the hammer. 

 Although there were inconsistencies in the evidence presented at trial, the jury acted as the
exclusive judge of the credibility of witnesses and of the weight to be given their testimony. It also
reconciled the conflicts in the evidence. In reviewing the evidence, we do not find that the jury's
verdict is against the great weight and preponderance of the evidence so as to be manifestly unjust. 
Accordingly, we overrule issue two. 


Impeachment of State's Witness by Remote Convictions

 In his first issue, Appellant complains that the trial court erred when it refused to allow him
to impeach State's witness Arterberry with three prior convictions. He further asserts that the trial
court erred when it wholly failed to conduct the Rule 609(b) balancing test. 

 When a witness testifies, the opposing party may attack the credibility of that witness by
presenting evidence that the witness has been convicted of any felony or a misdemeanor involving
moral turpitude, if the court determines that the probative value of admitting this evidence outweighs
its prejudicial effect to a party. Tex. R. Evid. 609(a). The rationale behind Rule 609 is that a
conviction of a felony or a minor offense involving moral turpitude is believed to be probative of a
defect in character that bears a logical relationship to the witness' truthfulness. See Commentary to
Rule 609, Texas Rules of Evidence Handbook (3d ed. 1998). If the conviction is for an offense
that falls into either of these categories, the court must then balance the probative value against the
potential prejudicial effect of admitting the evidence of the offense. See Tex. R. Evid. 609. The
Texas Court of Criminal Appeals has set out a nonexclusive list of factors that the trial court should
consider in conducting this balancing test: (1) the impeachment value of the crime; (2) the temporal
proximity of the past crime to the charged offense and the witness' subsequent criminal history; (3)
the similarity of the crime charged to the previous conviction; (4) the importance of the defendant's
testimony; and (5) the importance of the credibility issue. Theus v. State, 845 S.W.2d 874, 880
(Tex. Crim. App. 1992). 

 However, evidence of a conviction is presumptively inadmissible if, at the time of the
admissibility determination, a period of more than ten years has elapsed since the date of the
conviction, unless the proponent of the evidence shows and the court determines that the probative
value of admitting the evidence substantially outweighs its prejudicial effect. See Tex. R. Evid.
609(b); but see Lucas v. State, 791 S.W.2d 35, 50 (Tex. Crim. App. 1989) (evidence of extremely
remote convictions cannot be admitted for purposes of impeachment).

 But the Court of Criminal Appeals has carved out an exception to the general rule. If more
than ten years has elapsed, a prior conviction will not be held remote if the witness' lack of
reformation is shown by evidence of an intervening conviction for a felony or a misdemeanor
involving moral turpitude. See Lucas, 791 S.W.2d at 51; Sinegal v. State, 789 S.W.2d 383, 388
(Tex. App.-Houston [1st Dist.] 1990, pet. ref'd). Evidence of the lack of reformation or subsequent
felony and certain misdemeanor convictions may then cause the prior conviction to fall outside the
general rule and not be subject to the objection of remoteness. See McLendon v. State, 509 S.W.2d
851, 855-56 (Tex. Crim. App. 1974). 

 In Lucas, the State was allowed to impeach a defense witness with evidence of the witness'
almost twenty-year-old forgery convictions. The State argued that the witness had not reformed in
the intervening years because he had fled the jurisdiction of another state rather than face drunken
driving charges and he allegedly participated in a kick-back scheme to take part of a worker's pay
in return for showing the worker present at a jobsite even if the worker was absent. The Court of
Criminal Appeals held that while the trial court properly considered uncontroverted evidence of the
witness' flight to avoid prosecution in making its decision to admit the remote prior convictions, the
court erroneously considered evidence of the highly contested and unproven issue regarding the
witness' participation in an illegal kick-back scheme. Lucas, 791 S.W.2d at 52. The court
concluded that, without any other intervening acts of misconduct, evidence of flight ten years before
trial was not enough to show unreformed character at the time of trial. Id.

 In Sinegal, the State was allowed to impeach the defendant's credibility with five prior
convictions. The defendant had been released from prison ten and one-half years before trial, he did
not have any intervening convictions, and he was between sixteen and nineteen years old when he
committed the prior offenses. The court of appeals held that the trial court abused its discretion in
allowing evidence of the remote convictions because there was no evidence of lack of reformation. 
Sinegal, 789 S.W.2d at 388.

 We interpret these cases as requiring proof of intervening convictions before a remote
conviction may be admitted into evidence. 

 We accord wide discretion to the trial court's decision on whether evidence of a witness'
prior conviction was more prejudicial than probative, and the decision should be reversed on appeal
only if the court's ruling is a clear abuse of discretion. Bryant v. State, 997 S.W.2d 673, 676 (Tex.
App.-Texarkana 1999, no pet.). 

 

Application of Law to Facts 

 During the Rule 609(b) hearing, it was uncontested that Arterberry was convicted of a
violation of the Selective Services Statute in 1969, and that he was convicted for narcotics delivery
in 1975 and 1976. It was also uncontested that Arterberry was convicted of misdemeanor assault
in 1992. However, Appellant failed to prove that the assault was an assault against a woman, which
is a crime of moral turpitude. (1) The record is devoid of evidence of any of the convictions, including
the 1992 assault. 

 The most recent of the oldest convictions was almost twenty-five years old at the time of
trial. Since it is not clear that the 1992 misdemeanor assault was a crime of moral turpitude, it was
not admissible and could not be used to show that Arterberry had not been reformed (which would
have been an exception to the remoteness doctrine). Consequently, the trial court did not abuse its
discretion in finding that the convictions were inadmissible due to their remoteness.

 If we have misinterpreted Lucas and Sinegal, and proof is not required of intervening
convictions before a remote conviction may be admitted into evidence, we will apply the list of
factors that Theus suggested using in conducting the balancing test. The first factor - impeachment
value - weighs against admissibility because a violation of the Selective Service Statute (from our
limited vantage point) and convictions for drug delivery are not crimes of deception, which would
be relevant to a witness' capacity for truthfulness. (2) The second factor - the temporal proximity of
the past crime to the charged offense - weighs against admissibility, as the convictions are extremely
remote to the time of trial. The third (the similarity of the crime charged to the previous conviction)
and fourth (the importance of the defendant's testimony) factors are not relevant here because they
apply only to a defendant who testifies. The fifth factor - the importance of the credibility issue -
is of obvious significance in this case, but not of prime importance, since Arterberry did not testify
that he actually saw Appellant assault and rob Myles, but the victim did testify that it was Appellant
who attacked him. This factor does not weigh either for or against admissibility. We hold, therefore,
that even in conducting the balancing test, the trial did not abuse its discretion when it disallowed
Arterberry's remote convictions for impeachment purposes. 

 In issue one, Appellant also complains that the trial court wholly failed to conduct the
balancing test. We disagree. In a review of the record, we can infer that the trial court considered
all the factors in making her decision, and that she found that the evidence did not show that the
probative value of admitting the convictions substantially outweighed their prejudicial effect, as
shown from the following soliloquy:


 It is remote. I don't think this situation has ever come up, but as far as any balancing test as far as its
probativeness versus any prejudicial value here, I just don't see that it's allowable . . . It was codified
for a reason, and I think that's what we're dealing with right here. If there was something other than
what I see right now, perhaps I'd go along with it, but I just can't.



 Furthermore, even if the trial court had not made the above statement alluding to the
balancing test, there is no requirement that the trial court announce for the record that it has
conducted and completed the balancing test in its own mind. Houston v. State, 832 S.W.2d 180,
184 (Tex. App.-Waco 1992, pet. dism'd). The fact that a trial judge made a proper balancing test
can be implied from the record. Bryant, 997 S.W.2d at 676. While the record does not contain a
direct discussion by the court of its consideration of the balancing test factors, we presume the court
did perform the balancing test. Accordingly, we overrule Appellant's first issue. 

 We affirm the judgment of the trial court.


Opinion delivered October 31, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.



(DO NOT PUBLISH)
1. See Lopez v. State, 990 S.W.2d 770, 778 (Tex. App.-Austin 1999, no pet.)(misdemeanor assault is not
crime of moral turpitude); and see Arnold v. State, 36 S.W.3d 542, 547 (Tex. App.-Tyler 2000, pet.
ref'd)(misdemeanor assault by a man against a woman is a crime of moral turpitude).
2. The focus is on the extent to which the type of crime is directly related to truthfulness. See Kizart v. State,
811 S.W.2d 137, 141 (Tex. App.-Dallas 1991, no pet.)("There was no showing that the prior remote felony
conviction involved deceit, fraud, cheating, or stealing, which are generally considered more probative of an
untrustworthy disposition than crimes of violence.").