Opinion Issued December 11, 2003 
















     





In The
Court of Appeals
For The
First District of Texas




NOS. 01-02-00919-CR & 01-02-00920-CR




RODNEY LYENWOOD POTTS , Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause Nos. 872495 & 873393






MEMORANDUM OPINION

          In separate indictments, Rodney Lyenwood Potts, appellant, was charged with
aggravated sexual assault and aggravated kidnapping. Appellant pleaded not guilty
to both offenses before a single jury. The jury found appellant guilty of both offenses
as charged. After appellant pleaded true to a punishment enhancement paragraph, the
jury assessed punishment at life imprisonment and a $10,000 fine. In eight points of
error, appellant challenges (1) the sufficiency of the evidence, (2) the admission of
extraneous offense evidence, (3) the admission of hearsay testimony, and (4) the
denial of his motion for mistrial. We affirm. Background
The Aggravated Kidnapping and Aggravated Sexual Assault  
          On February 20, 2001, complainant, a 19-year-old female, was walking home
around 11:30 a.m. after spending the night with her boyfriend at a local motel. 
Although the walk was several blocks long, complainant had grown up in the
neighborhood, and, because it was the middle of the day, she felt comfortable walking
home. When complainant was only a few blocks away from her house, she noticed
a white cargo van parked across the sidewalk blocking her path. Appellant was
sitting in the back of the van with the doors open and his legs hanging out of the door. 
Complainant began walking around the van when appellant grabbed her and threw
her into the van. Appellant taped her mouth shut, taped her arms together, tied her
feet with wire, and drove away.
          During the drive, complainant studied the interior of the van. She testified that
the van contained a small dresser between the front seats and a cabinet in the back. 
Appellant did not speak to complainant during the drive except for a threat that he
was going to kill her. Appellant eventually stopped the van at an abandoned house
in an isolated area. Appellant untied the wire around complainant’s legs and ushered
her into the abandoned home and up the stairs. Appellant removed the tape around
complainant’s mouth and hands, and punched complainant, causing her to fall 
unconscious to the floor.
          When complainant awoke, appellant ordered her to take off her pants while he
pressed his knees against her throat. After complying, complainant passed out again. 
When she regained consciousness, she noticed she was in a different room, lying on
the floor with appellant on top of her. Appellant began beating complainant with a
wooden club, a brick, and his fists. Complainant lost consciousness again. When she
awoke again, appellant was on top of her raping her. During the sexual assault,
complainant drifted in and out of consciousness. Appellant left the room when he
was finished, and complainant tried to escape out a window. Appellant saw her,
however, and began punching her. Again, complainant lost consciousness. 
Complainant awoke to the fumes of gasoline being poured on and into her. Appellant
searched for a cigarette lighter, but the one that had been in complainant’s jacket had
fallen out during the rape and complainant was lying on top of it. When appellant
was not looking, complainant threw it out the window. Eventually, after his search
for the lighter was futile, appellant left the house and drove off in the van. 
Complainant ran out of the house half naked into the street. She stumbled about half
a block and then collapsed in a ditch on the side of the road. Dunn and Watson, two
passers-by, ultimately saw complainant and called the police. Eventually, appellant
was linked to the crime by his theft of the white van the day before the aggravated
kidnapping and aggravated sexual assault of complainant.
The Theft of the White Van
          Patrick Dolce, a drywall construction worker, owned a white 1985 Dodge van
that he used to carry both his personal and company tools. The van had the side
windows covered; inside, there was a night-stand between the front two seats and a
cabinet in the back. On February 16, 2001, four days before appellant’s assault on
complainant, Dolce, having experienced some financial troubles, pawned some of his
tools and began a carpentry job at the Kirk Motel. While at the motel, Dolce met
appellant. After talking for a while, Dolce loaned appellant the van to go get food for
them. The next morning, while Dolce was loading his tools into the van, appellant
approached Dolce and demanded Dolce’s van keys and his money. After appellant
hit and threatened Dolce, Dolce complied and appellant drove off in Dolce’s van. 
 
The Investigation 
          After the kidnapping and assault of complainant on February 20, 2001, an
investigation immediately began. After speaking with complainant, police searched
the abandoned house. Several pieces of evidence were found including a wooden
club and a brick. Although several items were sent to the crime lab, neither
fingerprints nor DNA could be obtained. Complainant was able to describe the
interior of the van and appellant, whom she eventually positively identified in a photo
spread. 
          The day after the assault, complainant’s aunt and sister were leaving their home
when they noticed a white van similar to complainant’s description. They followed
the van, saw appellant driving, wrote down the license plate number, and called the
police. A few days later, the white van was found abandoned. Inside the van were
Dolce’s tools and several items that did not belong to Dolce, including a third-grade
school notebook. Investigators inspected the notebook left in the van and determined
that it belonged to appellant’s child. The principal of the school that appellant’s
children attended also identified the notebook as that of appellant’s child, and also 
told investigators that, prior to February, appellant did not own a vehicle, but in
February appellant drove his children to school in a white van.  
 
 
DiscussionSufficiency of the Evidence
          In points of error six through eight, appellant contends the evidence is legally
and factually insufficient to support his conviction for aggravated kidnapping and
aggravated sexual assault. Appellant argues that the complainant’s identification of
appellant was unreliable, and there was no physical evidence linking either appellant
or the white van to the offense or location of the offense. Appellant also contends the
State failed to prove that the wooden stick used in the offense satisfied the legal
definition of a “club,” as alleged in the aggravated kidnapping indictment. 
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational fact-finder could
have found the essential elements of the crime beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We are not permitted to
substitute our judgment for that of the jury. Id. 
          In reviewing factual sufficiency, we examine all the evidence neutrally and ask
whether proof of guilt is so obviously weak as to undermine confidence in the jury’s 
determination or so greatly outweighed by contrary proof as to indicate that a
manifest injustice has occurred. Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim.
App. 2003); King, 29 S.W.3d at 563. While conducting our analysis, if there is
probative evidence supporting the verdict, we must avoid substituting our judgment
for that of the trier of fact, even when we disagree with the determination. King, 29
S.W.3d at 563. The trier of fact is the sole judge of the weight and credibility of the
witness testimony. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). 
          Under the law applicable to this case, to secure a conviction for aggravated
sexual assault, the State had to prove beyond a reasonable doubt that appellant (1)
intentionally or knowingly caused the penetration of the female sexual organ of
complainant, (2) without her consent, and (3) by acts or words, placed complainant
in fear of death or serious bodily injury. See Tex. Pen. Code Ann. §§
22.021(a)(1)(A)(I), (a)(2)(A)(ii) (Vernon 2003). A person commits aggravated
kidnapping if he (1) intentionally or knowingly abducts another person with the intent
to inflict bodily injury on her or to violate or abuse her sexually or if he (2)
“intentionally or knowingly abducts another person and uses or exhibits a deadly
weapon during the commission of the offense.”


 Tex. Pen. Code Ann. §§
20.04(a)(4), (b) (Vernon 2003).
          Here, complainant testified that she was walking down the street when
appellant, without her consent, grabbed her, threw her into a white van, and taped her
mouth shut and her arms together. She also testified that appellant beat her with a
wooden club and a brick, and raped her during the assault. A wooden stick and brick
were recovered at the scene of the assault. Police also recovered Dolce’s pawn slip
for his drywall tools at the scene of the assault. Furthermore, although complainant
passed out at various points during the commission of the offense, she was able to
positively identify appellant in a photographic lineup. There was also evidence
linking appellant to the white van. Appellant admitted that he was in possession of
the white van during the week of complainant’s kidnapping and sexual assault. 
Complainant also described the interior of the van that appellant drove and
transported her in prior to sexually assaulting her. Officer Stevens testified that he
found appellant’s children’s schoolbooks in the van; and the principal of the school
appellant’s children attended testified that during February appellant had been driving
his children to school in a white van. 
          Viewing the evidence in the light most favorable to the verdict, we find that the
evidence was legally sufficient for a rational trier of fact to find the essential elements
of the crime beyond a reasonable doubt. Viewing the evidence neutrally, we observe
that the jury decided, in this case, to believe complainant and her witnesses and to
disbelieve appellant. Because the jury, as trier-of-fact, is the sole judge of the weight
and credibility of the witness testimony, and because the proof of guilt was not so
obviously weak as to undermine confidence in the jury’s determination, or so greatly
outweighed by contrary proof as to indicate that a manifest injustice occurred, we
hold that the evidence was factually sufficient to support the verdict. 
Extraneous Offense Testimony
          In his first and second points of error, appellant contends the trial court erred
in admitting extraneous offense testimony evidence that appellant had obtained the
white van used during the aggravated kidnapping and aggravated sexual assault
during an unrelated automobile theft and robbery offense. Appellant claims not only
that such testimony was irrelevant, but also that the probative value of the extraneous
offense testimony was substantially outweighed by the unfair prejudice, undue delay,
and confusion of the issues relevant to the case.
          We review the trial court’s determination of admissibility under an abuse of
discretion standard. Roberts v. State, 29 S.W.3d 596, 600 (Tex. App.—Houston [1st
Dist.] 2000, pet. ref’d). As long as the trial court’s ruling was within the “zone of
reasonable disagreement,” there is no abuse of discretion, and we must uphold the
ruling. Id. 
          As a general rule, to prevent an accused from being prosecuted for some
collateral crime or misconduct, the State may not introduce evidence of bad acts
similar to the offense charged. Id. at 600-01. Rule 404(b) provides that evidence of
“other crimes, wrongs or acts” is not admissible to prove a defendant’s character in
order to show action in conformity therewith. Tex. R. Evid. 404(b). However, as an
exception to the general rule of exclusion, evidence of “other crimes, wrongs, or acts”
may be admissible if (1) it has relevance to a material issue other than to show that
the accused acted in conformity with some trait of character, and (2) the probative
value of the evidence is not “substantially outweighed by the danger of unfair
prejudice.” Roberts, 29 S.W.3d at 601. 
          Evidence of other crimes, wrongs, or acts is relevant apart from showing
character conformity if the proponent shows that it tends to establish some elemental
fact such as “proof of motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident.” Tex. R. Evid. 404(b); Roberts, 29
S.W.3d at 601. 
          Another exception to the general rule is same transaction contextual evidence.


 
See Rodgers v. State, 853 S.W.2d 29, 32-33 (Tex. Crim. App. 1993). Where several
crimes are intermixed, blended, or connected with one another so that they form an
indivisible criminal transaction, they are collectively referred to as same transaction
contextual evidence. See Wyatt v. State, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000);
Mayes, 816 S.W.2d at 86-87. Same transaction contextual extraneous offense
evidence is admitted not because it has any particular evidentiary purpose, but rather
because, in narrating the one offense, it is impracticable to avoid describing the other
extraneous offense. See Mayes, 816 S.W.2d at 86-87. Thus, same transaction
contextual offense evidence illuminates the nature of the crime alleged by imparting
to the trier of fact information essential to understanding the context and
circumstances of events. Camacho v. State, 864 S.W.2d 524, 532 (Tex. Crim. App.
1993).  
             Here, we conclude that the extraneous offense evidence—testimony that
appellant stole Dolce’s white van and the circumstances surrounding the theft—was
admissible to show the context in which the criminal act occurred.


 The van and its
contents tied appellant to the crime. Testimony established that appellant stole
Dolce’s van a few days before the aggravated sexual assault and aggravated
kidnapping of complainant. Appellant had no means of transportation prior to the
theft of the van. The white van was the vehicle used in the aggravated kidnapping
and transportation of complainant. The van was also central to developing appellant
as a suspect in the case and in the investigation of the offenses. Evidence found in
the van linked appellant to the crimes. The theft of the van also resulted in
appellant’s inclusion in a photographic spread from which complainant identified
appellant. The extraneous offense testimony was helpful for the jury to know why
Dolce’s van was the target of the investigation and why Dolce was not a suspect. 
The admission of evidence that appellant stole the white van used during the offenses
clearly described the circumstances surrounding the offenses and was helpful to the
jury’s comprehension of the offenses.
          We hold that there was no abuse of discretion in the court’s ruling to admit this
evidence. The evidence of the stolen van constituted contextual evidence indivisibly
connected to the charged offenses and therefore, it was relevant under Rules 401 and
404(b). Tex. R. Evid. 401, 404(b). We must also consider whether the unfair
prejudicial effect of the extraneous evidence substantially outweighed its probative
value. In doing so, we give great deference to the trial court’s determination of
admissibility. Montgomery v. State, 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1990). 
 The prejudicial nature of same transaction contextual evidence rarely renders such
evidence inadmissable, as long as it sets the stage for the jury’s comprehension of the
whole criminal transaction. Houston v. State, 832 S.W.2d 180, 183 (Tex.
App.—Waco 1992, pet dism’d). Here, the prejudicial effect of admitting the
extraneous offense evidence was slight in comparison to the probative value. The
admission of the extraneous theft of the white van helped link appellant to the van
used in the kidnappping, and it also discredited any notion that Dolce was somehow
involved. We agree with the trial court’s determination that the facts of the theft and
robbery of the white van are not so egregious as to be highly prejudicial. 
Consequently, the trial court did not abuse its discretion in admitting this evidence.
          We overrule appellant’s first and second points of error. 
Hearsay Testimony

          In his third and fourth points of error, appellant argues that the trial court erred
by admitting complainant’s hearsay statements made to Dunn and Sergeant Carter. 
Appellant contends that Dunn’s and Sergeant Carter’s testimony—that the
complainant had told them she had been sexually assaulted—did not qualify as an
“excited utterance” exception to the hearsay rule. 
          We review a trial judge’s decision to admit or exclude evidence under an 
abuse of discretion standard. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App.
2002). The admissibility of an out-of-court statement under an exception to the
general hearsay exclusion rule is within the trial court’s discretion. Lawton v. State,
913 S.W.2d 542, 553 (Tex. Crim. App. 1995). The decision of the trial court will be
affirmed if its decision is within the zone of reasonable disagreement on the particular
issue. See Torres, 71 S.W.3d at 760; Montgomery, 810 S.W.2d at 391.
          For hearsay to be admissible, it must fit into an exception provided the Rules
of Evidence. One such exception is an excited utterance which is a “statement
relating to a startling event or condition made while the declarant was under the stress
of excitement caused by the event or condition.” Tex. R. Evid. 803(2). 
          In determining whether an excited utterance statement is admissible, the court
may consider the time elapsed and whether the statement was in response to a
question. However, it is not, as appellant claims, dispositive that the statement is an
answer to a question or that it was separated by a period of time from the startling
event; these are only two factors in determining whether a statement is an excited
utterance. Salazar v. State, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001); Lawton, 913
S.W.2d at 553. The key factor is “whether the declarant was still dominated by the
emotions, excitement, fear, or pain of the event.” Lawton, 913 S.W.2d at 553. 
          Here, the record supports the trial court’s decision to admit Dunn’s testimony
regarding what complainant told her. Dunn testified that complainant’s “emotions
were distress, fear. She kept repeating that she was scared” and that, while in that
emotional state, complainant indicated that a stranger driving a white van was
responsible for beating and raping her. Although complainant made her declarations
in response to questions by Dunn, this is only one factor to consider in determining
the admissibility of an excited utterance. Appellant contends the State failed to
establish the time frame from when complainant left the vacant house to when she
spoke to Dunn. The time lapse between the actual event and the hearsay is also only
one factor to consider. The record in this case establishes that Dunn was the first
person complainant spoke to and, despite the amount of time that passed, complainant
was still “scared” and “hurting.” Based on Dunn’s testimony, we conclude that the
trial court did not abuse its discretion in admitting complainant’s statements under the
excited utterance exception to the hearsay rule. 
          Similarly, the trial court did not err in admitting complainant’s statements to
Sergeant Carter and in permitting Carter to testify about what complainant told him;
these statements were also admissible under the excited utterance hearsay exception. 
Carter met with complainant at the scene, but did not get to speak with her until three
hours later, after complainant was transported to and treated at the hospital. Carter
testified that, at the hospital, although complainant was in better physical condition,
she was still upset and traumatized. While in the hospital, complainant told Carter
that she was abducted, beaten, and sexually assaulted. Although complainant’s
statements regarding the kidnapping and assault were made to Carter approximately
three hours after she was found, they were made while complainant was still
dominated by the emotions and pain of the physical and sexual assault. Therefore,
the statements qualify as admissible excited utterances and fall within the hearsay
exception. Because the record supports the trial court’s ruling that the statement was
admissible as an excited utterance, we cannot say that the trial court abused its
discretion. 
          We overrule appellant’s third and fourth points of error. 
Denial of Motion for Mistrial 
          In his fifth point of error, appellant challenges the trial court’s denial of his
motion for mistrial after an officer started to testify that there was a report made of
domestic abuse associated with the name Joyce Richardson, appellant’s wife. While
Officer Stevens was being examined by the State, the following exchange occurred: 
Question:Okay. Did you in your investigation
find that a male also lived at that
residence?
 
Answer:Yes, I did. That was a report made of
domestic abuse where— 
 
Mr. Anderson:Excuse me, Your Honor. I’m going
to object to—sorry. I would object to
that.
 
Court:Sustained.
 
Mr. Anderson:I would ask that be struck from the
record, Your Honor.
 
Court:Stricken from the record.
 
Mr. Anderson:And the jury be— 
 
Court:Instructed to disregard?
 
Mr. Anderson:Yes, Your Honor.
 
Court:Jury is instructed to disregard the last
statement and not consider it for any
purpose.
 
Mr. Anderson:We move for a mistrial.
 
Court:That will be denied. 

Appellant argues that this denial of his motion for mistrial was error because the clear
inference of the officer’s testimony was that the appellant committed the domestic
violence offense.
          We do not disturb a trial court’s ruling denying a motion for mistrial unless it
amounts to an abuse of discretion. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim.
App. 1999). A trial court should only grant a mistrial in extreme cases when error is
so prejudicial as to appear calculated to inflame the minds of the jury members. Id. 
Whether an error necessitates a mistrial depends on the particular facts of the case. 
Id. Generally, a mistrial will not be necessary because a prompt instruction to
disregard will cure error associated with the improper testimony. See Orvalle v. State,
13 S.W.3d 774, 783 (Tex. Crim. App. 2000). We presume the jury followed a trial
court’s prompt admonishment to disregard the improper evidence. Ladd, 3 S.W.2d
at 567. 
          In the instant case, after reviewing the record and the improper testimony, we
conclude that the answer was not calculated to inflame the minds of the jury, and was
not of such a nature that it was impossible to withdraw a prejudicial impression from
the minds of the jurors. The trial court promptly struck the testimony from the record
and instructed the jury to disregard. These prompt measures were sufficient to cure
any error from the answer. We overrule appellant’s fifth point of error. 
 
 
 
Conclusion

          We affirm the judgment of the trial court. 



 
 
Evelyn V. Keyes
                                                             Justice

Panel consists of Chief Justice Radack and Justices Keyes and Alcala. 
Do not publish. Tex. R. App. P. 47.2(b).